UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Estate of Michele M. Walker, Charles E. Walker )
  Administrator )
  )
Plaintiff )
  )    Civil Action #_____
v. )                (new filing)
  )
State of New Hampshire – Administrative )
  Office of the Courts )
AND )
State of New Hampshire – NH Second Circuit, )
    Littleton District Division – Administrative )
    Office of the Courts )
  )
Defendants )

## COMPLAINT

NOW COMES the Estate of Michele M. Walker, Charles E. Walker, Administrator on behalf of Michele M. Walker, Plaintiff, by and through her attorney, Law Office of Leslie H. Johnson, PLLC, and complains against the State of New Hampshire – Administrative Office of the Courts and NH Second Circuit – Littleton District Division, Defendants, and in support thereof states as follows:

## INTRODUCTION

1.     Plaintiff brings this action pursuant to the statutory and common laws of the State of New Hampshire, particularly NH RSA 354-A, and federal law under Title VII, 42 USC 2000e, et seq., gender discrimination/hostile work environment/sexual harassment/ retaliation, and pursuant to NH RSA 354-A for marital status discrimination and sexual orientation discrimination. Plaintiff also brings this claim pursuant to NH RSA 354-A and the Americans with Disabilities Act ("ADA"), 42 USC §12101, et. seq., for disability/perceived disability discrimination/failure to accommodate.

1

## PARTIES

2.      The Estate of Michele M. Walker, Charles E. Walker, Administrator on behalf of Michele M. Walker (hereinafter collectively referred to as "Plaintiff"), was a female resident of Bethlehem, County of Grafton, State of New Hampshire, with an address of 368 Old Franconia Road, Bethlehem, NH 03574, at the time of the unlawful actions by Defendant and while she was employed by Defendant.

3.      Plaintiff committed suicide on or about 05/03/10 due to her emotional state, which was directly related to and caused by the harassment and retaliation she received from her employer and the events as described herein. On or about 06/09/10, Plaintiff's husband, Charles E. Walker ("Mr. Walker"), filed for Administration of Plaintiff's estate and was named Administrator on or about 07/06/10.

4.      The State of New Hampshire – Administrative Office of the Courts is the Judicial Branch of the State of New Hampshire, with the Administrative Office of the Courts overseeing the administration of the courts in this state. The State of New Hampshire – Administrative Office of the Courts principal mailing address is 2 Charles Doe Drive, Concord, NH 03301, and its Director is Donald D. Goodnow, Esquire.

5.      The State of New Hampshire – NH Second Circuit, Littleton District Division f/k/a Littleton District Court and Littleton Family Division – Administrative Office of the Courts is overseen by the State of New Hampshire – Administrative Office of the Courts and is part of the Judicial Branch in this state. The NH Second Circuit – Littleton District Division is located at 134 Main Street, Littleton NH 03561.

6.      The State of New Hampshire – Administrative Office of the Courts and the State of New Hampshire – NH Second Circuit, Littleton District Division – Administrative Office of the Courts will be herein referred to collectively as "Defendant."

7.      Venue is proper as the NH Second Circuit – Littleton District Division is within the State of New Hampshire and is where all unlawful employment acts complained of were committed.

8.      The Court has subject matter jurisdiction over federal questions pursuant to 28 USC §1331 and supplemental jurisdiction pursuant to 28 USC §1367.

9.      Defendant was the employer of Plaintiff and is responsible for all of actions of its employees, who were acting within the scope of their employment at all times, under the theories of *respondeat superior* and vicarious liability, as well as being responsible for the actions of the investigator and its counsel.

10.     On or about 01/25/10, Plaintiff filed a timely Charge of Discrimination with the NH Commission for Human Rights ("NHCHR"), Docket #(EDS(R)0077-10/16D-2010-00083, against Defendant for discrimination, harassment and retaliation which had been ongoing since on or before 07/07/08 and continuing. The Charge was filed within 180 days of the last event. The allegations contained herein culminated in Plaintiff's suicide.

11.     On or about 12/29/10, the Estate of Michele M. Walker filed an Amended Charge of Discrimination with the NHCHR against Defendant to detail harassment and retaliation that occurred subsequent to the original Charge. The Estate removed both the Charge and Amended Charge on or about 02/11/11 from the NHCHR in order to file in court. The EEOC issued a Dismissal and Notice of Rights on or about 06/01/11, which was received by

Plaintiff in care of her attorney on or about 06/06/11, and this Complaint is filed within 90 days of receipt of the Dismissal and Notice of Rights.

## STATEMENT OF FACTS

12.     Michele M. Walker was employed as Clerk of the Littleton District Court n/k/a the NH Second Circuit – Littleton District Division commencing on or about 11/09/96. At all times, she was qualified for the position and performed her job well.

13.     During the course of her employment from the winter of 2007 until she left work on or about 08/20/09, Plaintiff was subjected to severe and/or pervasive sexual harassment which created a hostile work environment. Said harassment included, but was not limited to:

    a.      Repeated requests by coworkers to participate in homosexual activity even though she was known to be heterosexual and married;

    b.      Coworkers repeatedly and openly discussing openly participating in homosexual activities with one another;

    c.      Coworkers bringing in and showing pictures of homosexual parties they were involved in.

    d.      Comments such as:

        i.      "I can still land a guy in his twenties;"

        ii.     "I gave the bailiff a blowjob and he never had it done with a tongue ring before;"

    e.      Numerous sexual comments made back and forth between two or three coworkers about a judge of the Littleton District Court, which for purposes of decency the comments will not be set forth herein. In fact, coworker M. Brown ("Brown") openly discussed her sexual feelings for this judge;

4

f.      Sexually offensive jokes;

g.      Coworker L. Gilman ("Gilman") lifting up her shirt showing her belly ring to Plaintiff and asking if Plaintiff wanted to see her nipple rings;

h.      Plaintiff picked up the Family Division phone to cover for absent coworkers when a male voice said, "Hello, Mrs. Blowjob. You were good last night." When Plaintiff identified herself, the individual hung up;

i.      In 2008, Gilman circulated a sexually explicit joke via email. Instead of it going to Plaintiff's email, it went to M. Walker at Lancaster Probate Court who contacted Plaintiff and stated she did not like the email and found it very offensive. To the best of Plaintiff's knowledge and belief, M. Walker filed a complaint with the Administrative Office of the Courts against M. Brown;

j.      In the beginning of 2009, Brown made phone calls back and forth with her boyfriend and then announced to everyone that she would be going home for a very long lunch hour, that she could not wait to see her boyfriend because "they had things to catch up on," insinuating sex. Brown was gone for two hours. When Brown returned, she had on a different set of clothes. When asked why she changed her clothes, Brown stated she had no choice;

k.      Brown, referring to a NH State Trooper she thought was attractive stated, "I just want to lick his teeth;" and,

l.      On or about 08/17/09, Brown asked Plaintiff if her husband could "still get it up or does it not work anymore," referring to an erection.

5

14.     During the course of her employment from the winter of 2007 forward, Plaintiff was subjected to a hostile work environment and retaliation, including but not limited to the additional following events:

a.      L. Towle ("Towle"), a coworker of Plaintiff, calling her a bitch on several occasions;

b.      Towle yelling and screaming in her face on numerous occasions;

c.      Towle saying to Plaintiff such things as, "I hate you," "You're such a princess," and "I don't have to listen to you."

d.      On or about 07/21/09, Towle made a comment that she had a lot of knives at home with lots of names on them and then looked directly at Plaintiff and smirked;

e.      On or about 08/11/09, Towle became red-faced and angry, yelling at Plaintiff, "I told you not to answer my phones or wait on the customers!"

f.      On or about 08/12/09, Towle again became red-faced and angry toward Plaintiff. Towle was so angry that her hands were shaking, and she said, "Go ahead, talk to Brown, bitch. It won't do you any good now. They will believe me not you!" At this point, Plaintiff became scared for her safety at work;

g.      On or about 08/13/09, Towle approached Plaintiff on at least three occasions that day, yelling and red-faced; and,

h.      Plaintiff observed other improper activities at work which were contrary to various public policies, including but not limited to the following:

i.      Towle telling Plaintiff that she went with her son to her ex-husband's house in the middle of the night so he (the son) could write foul things

6

on the ex-husband's vehicle. Plaintiff reported this to Judge Cyr, Brown and P. Kozlowski ("Kozlowski"). Nothing was done about it;

       ii.    Towle discussing her personal legal problems with her attorney in a loud and very upset manner at the court window during business hours;

       iii.    Towle reviewing financial information in confidential documents submitted to the Littleton Family Division for her own dating purposes;

       iv.    On or about 08/17/09, Brown sat at a spare desk in the District Court office and shopped for a car online most of the day.

15.    Despite Plaintiff having made multiple complaints to her supervisor, Kozlowski, regarding the sexual harassment, hostile work environment, and inappropriate activities of coworkers as set forth in court policy, Plaintiff was actively discouraged by Kozlowski from bringing the nature of the incidents to light and informed Plaintiff she was afraid of what would happen to Plaintiff if she reported the incidents. Kozlowski failed/refused to take corrective action to report Plaintiff's complaints in accordance with the court's harassment policy, or to take other steps to help Plaintiff escape said harassment. Kozlowski repeatedly told Plaintiff that G. Apicelli ("Apicelli"), Kozlowski's direct supervisor, did not like Plaintiff, that the incidents were occurring in the Family Division and were, therefore, outside of Kozlowski's ability to do anything about them, that Brown was one of Apicelli's "golden girls," and Plaintiff should not make any complaints against Brown if she knew what was good for her.

16.    To the best of Plaintiff's knowledge and belief, Apicelli was in charge of the Family Division as well as being Kozlowski's direct supervisor.

17.     On or about 08/09/10, Plaintiff attempted to contact Brown stating the matter was urgent as Towle was becoming more and more aggressive toward Plaintiff to the point Plaintiff was fearful. However, Brown failed and/or refused to contact Plaintiff. Plaintiff again attempted to reach Brown via telephone and email on 08/10/10 and 08/11/10, still with no success. Finally on or about 08/12/10, Brown emailed Plaintiff stating she was extremely busy and, therefore, could not meet with her until 08/18/10 at the earliest. With the situation as it was, Brown's response was totally unacceptable. Due to same, Plaintiff contacted Kozlowski who stated she was heading to Concord and if she ran into Apicelli she might suggest that Apicelli contact Brown.

18.     On or about 08/12/10, Towle had become aggressive toward Plaintiff, calling her a bitch while being red-faced and coming right up to Plaintiff's face. Plaintiff was extremely afraid and scared for her own safety at work.

19.     Later on 08/12/10, Plaintiff received a telephone call from Brown and Plaintiff described how hostile the environment had become. Brown stated she would speak with Apicelli. Plaintiff again expressed the urgency and her fear of safety, and Brown again stated she would speak with Apicelli.

20.     On or about 08/13/09, not having heard back from Brown, Plaintiff called Human Resources and spoke with J. Smith ("Smith"), telling him she felt unsafe in her work environment and that she wanted to file an insubordination charge, grievance or anything that would protect her. Instead, Smith informed Plaintiff that he would not get involved and the matter had to be resolved through Kozlowski and Brown.

21.     Later on 08/13/09, after speaking with Smith, Plaintiff filed a written formal complaint against Towle and sent it to Kowlowski, Apicelli, Brown and the Honorable Edwin

W. Kelly ("Judge Kelly"), setting forth that she was in fear of her safety and well being due to the hostile work environment caused by Towle.

     22.    On or about 08/13/09, after filing the written complaint, P. Hurley ("Hurley") from the Administrative Office of the Courts phoned Plaintiff stating she was ordered to come to the Littleton Court and would be there the following day. Later that day, Judge Kelly telephoned Plaintiff and confirmed same.

     23.    On or about 08/14/09, when Plaintiff arrived at work, she was met by P. Keniston ("Keniston"), who she was told would be replacing her for the day. In addition, Brown was there, although she ignored Plaintiff when Plaintiff arrived. Hurley had arrived two hours ahead of time. It was obvious to the entire staff that something was going on that involved Plaintiff. The investigation was not handled in a confidential manner since the meetings were held at the Littleton Court, and Brown was interviewed directly after Plaintiff. All staff was placed in an awkward and uncomfortable position, and Plaintiff's privacy was violated contrary to employment policy.

     24.    Plaintiff had been advised by Kozlowski to only raise the most current issues with Hurley, which Plaintiff attempted to do. However, each time Plaintiff would begin explaining Hurley would interrupt her and question her in such a way that Plaintiff felt like she was on trial. When Plaintiff demonstrated to Hurley the way Towle would act and speak toward Plaintiff, Hurley said, "Like that Michele? Really? Just like that?" in a tone that indicated she did not believe Plaintiff. When Plaintiff asked Hurley what she was going to do, Hurley stated, "I don't know. Paula doesn't have a fairy godmother wand and cannot magically fix Littleton's problems."

25.     Later on 08/14/09, Plaintiff met with a NH State Trooper who reported to Plaintiff some confidential information about Towle which caused Plaintiff to be in even more fear.

26.     On or about 08/15/09, Plaintiff met with Sergeant Cohen at her home and expressed her fear of Towle but she did not want to press charges due to the publicity it could cause the Littleton Court.

27.     On or about 08/17/09, Plaintiff emailed Judge Kelley requesting a confidential meeting with him due to the escalating hostile work environment. Plaintiff was denied a meeting and instructed to speak with Hurley.

28.     On or about 08/18/09, Hurley arrived at the Littleton Court announcing that she was just going to "hang out" that day and observe. This was a busy court day and, therefore, Plaintiff apologized to Hurley ahead of time that she would not be able to meet with her. Hurley stated that was not a problem. However, around 10:28 AM, Hurley insisted Plaintiff come into chambers to speak with her privately. Plaintiff informed Hurley she had a meeting with a prosecutor at 10:30 AM, but Hurley was adamant that Plaintiff meet with her then. Plaintiff complied. Hurley then told Plaintiff she understood Plaintiff had more concerns. Plaintiff again stated she did not have the time to speak about her concerns at that time and, therefore, could not go into them in detail. Plaintiff stated she felt Hurley was putting her on trial, and Plaintiff was concerned she was not really being heard. Plaintiff reiterated the great deal of stress she was under, that she was the victim, and she was concerned she was going to crack.

29.     The following day, 08/19/09, Plaintiff was left alone to work beside Towle with no supervisor in Family Court, after Defendant knew the fear Plaintiff had of her own safety from Towle. Plaintiff emailed both Hurley and Judge Kelly and expressed her concern.

30.     Later in the morning on 08/19/09, Plaintiff called Hurley who returned Plaintiff's call, sounding very upset with Plaintiff for interrupting a meeting Hurley was in. When Plaintiff asked Hurley what was going to be done, Hurley told Plaintiff, "All you've got is a story, Michele, just a big story." When Plaintiff stated she did not want to file for a restraining order against Towle, Hurley said, "You do what you've got to do. We're done with this matter." Hurley informed Plaintiff that she was not allowed to speak with B. Knapp ("Knapp"), one of Plaintiff's coworkers, about the investigation or she would be fired.

31.     On or about 08/20/09, due to escalating workplace harassment, Plaintiff went on medical leave under FMLA. Defendant was put on notice of Plaintiff's disability based on the information provided to it in writing from Plaintiff's doctor as required. Alternatively, Defendant perceived Plaintiff as a person with a disability.

32.     On or about 09/19/09, Plaintiff received two letters, one dated on or about 09/16/09, from the Administrative Judge for the District Courts, Judge Kelly, which ordered Plaintiff to return to work by 09/28/09; and the second from A. Paulin ("Paulin") enclosing a Fitness for Duty Certification form. On or about 09/07/09, Plaintiff forwarded a letter to Smith, copying Judge Kelly, Kozlowski, and Hurley, requesting clarification on when Plaintiff should return to work as the two letters received on 09/19/09 contradicted one another.

33.     Thereafter, the Administrative Office of the Courts and the District Court refused to engage in the interactive process with Plaintiff by failing/refusing to respond to numerous written and verbal inquiries concerning Plaintiff's leave and return to work.

34.     Finally, on or about 10/20/09, Judge Kelly forwarded Plaintiff a letter stating she was not to return to work until they received a Fitness for Duty Certification form from her healthcare provider.

35.     On 11/20/09, Plaintiff contacted Defendant and requested to return to work on 12/08/09, and requested reasonable accommodations for her return. Plaintiff's doctor provided documentation to the Administrative Office of the Courts to clear her return with the accommodations, which were to return on a part-time basis for a few weeks and slowly increase her hours depending on her comfort level. Defendant denied the accommodations, indicating that Plaintiff did not have a disability.

36.     Defendant retaliated against Plaintiff for making a complaint of sexual harassment and other complaints. Plaintiff was told that until the ongoing investigation of her complaints of sexual harassment was complete, she was not allowed to return to the Littleton Court without authorization.

37.     Ultimately, Defendant hired counsel and allegedly an "independent" investigator. Plaintiff was not allowed to return to work pending the investigation, which was supposed to be "prompt and thorough." Plaintiff appeared for a scheduled interview at the Plymouth Common Man on 12/11/09, with her counsel, but counsel for the Defendant did not show, and Plaintiff was sent away without being questioned by the investigator.

38.     Subsequently, Plaintiff was certified by her physician to return to work without accommodation 01/15/10, and she communicated her request to be allowed to return to work through counsel, which was denied.

39.     Plaintiff was subjected to investigatory interviews on 01/12/10 and 02/05/10 at Plymouth District Court, each lasting from approximately 10 AM to 3 PM interrupted by a lunch break. The "interviews" were conducted more as a cross examination/interrogation than an attempt to discover the truth.

40. Said investigation was hostile and intimidating to Plaintiff. The questioning took place in the office of Apicelli at Plymouth District Court, while both Apicelli and Judge Kelly were apparently down the hall. The investigator treated Plaintiff in a hostile manner, at times yelling at her, and questioning her aggressively. By way of example only, the investigator rudely and loudly made reference to "f***ing." Defendant is responsible for the actions of its investigator.

41. Neither Defendant, Defendant's investigator or Defendant's counsel made any attempts to recognize the difficult position Plaintiff was in, instead treating her as an adversary. Very little of the questioning concerned Plaintiff's complaints, but rather circled around Plaintiff's own personal and professional behavior. Additionally, on more than one occasion, the investigator and counsel cancelled interviews at the last minute, further delaying resolution and causing Plaintiff heightened anxiety over the obvious and continued hostility she was receiving from Defendant and its refusal to allow her to return to work.

42. Throughout the investigation until approximately the beginning of March 2010, Plaintiff reiterated her request to return to work. Thereafter, Plaintiff was so traumatized by the treatment she received during the investigation, and her recollection of the underlying events, that her condition degenerated to the extent that she became disabled, unable to return to work, and continue with the aggressive questioning of the investigator and Defendant's counsel who was also present.

43. The incidents at work and as described herein, including the process of the "investigation," were so distressing to Plaintiff that she committed suicide on or about 05/03/10.

44. Defendant knew or should have known that its actions as described herein were illegal and contrary to the law. Said actions were done knowingly, maliciously, with reckless

indifference and were egregious and wanton, thus justifying an award of enhanced/liberal compensatory damages.

45.     The discrimination, harassment and retaliation which Plaintiff endured from her employer, and its representatives, caused her to suffer damages, including but not limited to, disability, severe and other emotional distress, aggravation, embarrassment, humiliation, sleeplessness, anxiety, inability to work, lost wages and benefits, loss of life, and other losses and damages described herein.

46.     Plaintiff claims damages which are within the jurisdictional limits of this Court, including damages for punitive damages, liberal compensatory damages, enhanced compensatory damages to reflect the aggravating circumstances, damages for inability to work, back pay, front pay, lost benefits, loss of future earning capacity, emotional distress (extreme and garden variety), depression and other diagnosed disorders as described in her medical records, sleeplessness at night, embarrassment, humiliation, aggravation, liquidated damages, damages to reputation, tax consequences, reasonable costs and attorney fees related to this action, and all other damages as allowed by law, all of which Plaintiff has suffered due to the discrimination/ harassment by Defendant and its agents as set forth herein.

## COUNT I
## GENDER DISCRIMINATION/SEXUAL HARASSMENT/
## HOSTILE WORK ENVIRONMENT
## NH RSA 354-A

47.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

48.     The actions which Plaintiff complains of herein constitute gender discrimination/ hostile environment/sexual harassment.

49.     Said actions were committed against Plaintiff based upon her female gender.

50.     Defendant had a duty to Plaintiff to provide a work environment free from discrimination and harassment on the basis of her gender, but instead engaged in a consistent pattern of discrimination and harassment of Plaintiff based upon her gender, contrary to NH RSA 354-A, et seq.

51.     Due to said discrimination and harassment, Plaintiff's work environment was hostile, which impacted upon her ability to perform her job, as it would for any reasonable woman. As a result of said discrimination/hostile environment/sexual harassment, Plaintiff suffered damages as described herein, including her suicide.

52.     Plaintiff's treatment by Defendant in refusing to protect her from sexual harassment and discrimination, caused anxiety, fear, loss of sleep, and other physical and emotional symptoms to Plaintiff in addition to financial damages. Plaintiff claims all damages as described herein and as allowed by law, which are within the jurisdictional limits of the Court.

53.     Plaintiff all claims damages as described above at par. 46.

**COUNT II**
**GENDER DISCRIMINATION/SEXUAL HARASSMENT/**
**HOSTILE WORK ENVIRONMENT**
**TITLE VII (42 USC §2000e, et seq.)**

54.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

55.     The actions of which Plaintiff complains herein constitute gender discrimination/ hostile environment/sexual harassment.

56.     Defendant had a duty to Plaintiff to provide a work environment free from discrimination and harassment on the basis of her gender, but instead engaged in a consistent

pattern of discrimination and  harassment of Plaintiff based upon her gender, contrary to Title VII, 42 USC §2000e, et seq.

57.     Due to said discrimination and harassment, Plaintiff's work environment was hostile, which impacted upon her ability to perform her job, as it would any reasonable woman. As a result of said discrimination/ hostile environment/ sexual harassment, Plaintiff suffered damages as described herein, including her suicide.

58.     Plaintiff's treatment by Defendant in refusing to protect her from sexual harassment and discrimination caused anxiety, fear, loss of sleep, and other physical and emotional symptoms to Plaintiff in addition to financial damages. Plaintiff claims all damages as described herein, and as allowed by law, which are within the jurisdictional limits of the Court.

59.     Plaintiff all claims damages as described above at par. 46.

## COUNT III
## RETALIATION
## NH RSA 354-A, et seq.

60.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

61.     Plaintiff asserts that she repeatedly complained about discrimination and sexual harassment, which was based upon her gender and she was retaliated against for her complaints as described above. The retaliation included screaming at her, encroaching on her personal space, further hostile actions, failure to investigate and then a shoddy, hostile, slow and partial investigation.

62.     Plaintiff was retaliated against for attempting to use the proper channels to stop the sexual harassment and discrimination, to remedy the hostile environment, which improperly interfered with Plaintiff's work.

63.     Defendant refused to allow Plaintiff to return to work in accordance with her doctor's orders, specifically because the investigation was not completed. Said investigation by the alleged impartial, but still hostile, investigator was not commenced until after Plaintiff left work. Said interviews, more accurately described as interrogations, were recorded.

64.     As a result of the retaliation, Plaintiff's mental state deteriorated to the point that she was again taken out of work medically by her doctor, and eventually tragically took her own life.

65.     Said retaliation was on the basis of Plaintiff's complaints about sexual harassment/gender discrimination, all contrary to NH RSA 354-A, et seq.

66.     As a result of said retaliation, Plaintiff suffered damages as described herein, including her suicide.

67.     Plaintiff's treatment by Defendant's retaliation against her, including the retaliation by her coworkers, caused Plaintiff extreme emotional distress, garden variety emotional distress, anxiety, fear, loss of sleep, and other physical and emotional symptoms to Plaintiff in addition to financial damages.

68.     Plaintiff claims all damages as described herein, and as allowed by law, which are within the jurisdictional limits of the Court.

69.     Plaintiff all claims damages as described above at par. 46.

**COUNT IV**
**RETALIATION**
**TITLE VII (42 USC §2000-e, et seq.)**

70.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

71.     Defendant's actions in retaliating against her as described herein, and particularly in Count III above, constitute illegal retaliation contrary to 42 USC §2000-e, et seq., and have caused damage to Plaintiff as described herein. Plaintiff claims all damages as allowed by law.

72.     Plaintiff claims all damages as allowed by law. Plaintiff all claims damages as described above at par. 46.

**COUNT V**
**SEXUAL ORIENTATION/DISCRIMINATION/HARASSMENT**
**NH RSA 354-A, et seq.**

73.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

74.     Plaintiff was discriminated against and harassed on the basis of her sexual orientation, which was heterosexual.

75.     Other coworkers who participated in the homosexual encounters were not treated in a hostile manner. Had Plaintiff participated, it is probable that she would not have been harassed, ostracized or treated in the hostile manner as described herein, or retaliated against. Plaintiff was discriminated against on the basis that she was a heterosexual female.

76.     Defendant's actions were illegal and contrary to NH RSA 354-A, et seq., particularly NH RSA 354-A:7.

77.     As a result of said discrimination/hostile environment, Plaintiff suffered damages as described herein, including her suicide.

78.     Plaintiff claims all damages as allowed by law and as described elsewhere herein.

79.     Plaintiff all claims damages as described above at par. 46.

## COUNT VI
## MARITAL STATUS DISCRIMINATION/HARASSMENT
## NH RSA 354-A, et seq.

80.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

81.     Plaintiff was also discriminated against on the basis of her marital status, as a married female, contrary to NH RSA 354-A, et seq.

82.     At the time Plaintiff married Mr. Walker, the couple had to make a choice as to who would remain working at the Littleton Court location, as there allegedly were rules about married couples working in the same court system. Whereas, the unmarried couples, such as the employees participating in the homosexual relationships faced no such exclusion.

83.     Also, as alleged above, comments were made about Plaintiff's sexual relationship with her husband.

84.     Due to said discrimination/harassment, Plaintiff suffered emotional distress and other damages as alleged herein. Plaintiff claims all damages as allowed by law.

85.     Plaintiff all claims damages as described above at par. 46.

## COUNT VII
## DISABILITY DISCRIMINATION
## NH RSA 354-A, et seq.

86.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

87.     Plaintiff's disability was emotional distress and anxiety, leading to depression and the conditions described in her medical records, and ultimately her suicide. Said disability impacted Plaintiff's ability to participate in numerous activities of daily living, including but not limited to work.

88.     Defendant was put on notice of Plaintiff's disability in writing by Plaintiff's doctor, and by information received from Plaintiff.

89.     Defendant initially allowed Plaintiff to go on FMLA leave and then decided that Plaintiff did not suffer from a disability. However, Defendant then prevented Plaintiff from returning to work and subjected her to a hostile investigation. Upon information and belief, others involved in the investigation were not treated in a hostile manner.

90.     Plaintiff inquired about workers' compensation and was told by management that she would be wasting her time, and therefore did not file at that time.

91.     Defendant refused to engage in the interactive process with Plaintiff by not responding to numerous written and verbal inquiries concerning her leave and return to work. When Plaintiff requested to return to work, with reasonable accommodations, she was denied, and Defendant refused to participate in the interactive process. When Plaintiff requested to return to work with no accommodations, said request was also denied.

92.     Plaintiff asserts the treatment she received, as described herein, was because of her disability or perceived disability and she was impermissibly discriminated against. Although Plaintiff at times was disabled from working, during the times she could have worked with reasonable accommodations, she was not allowed to do so.

93.     Plaintiff asserts that the treatment she received, as described herein, was because of her disability or perceived disability, and that she was impermissibly discriminated against contrary to RSA 354-A, et seq., and the ADA.

94.     Due to said discrimination and treatment, Plaintiff suffered damages as described elsewhere herein. Plaintiff claims all damages as allowed by law.

95.     Plaintiff all claims damages as described above at par. 46.

**COUNT VIII**
**DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITY ACT**
**(ADA, 42 USC §12101, et seq.)**

96.     Plaintiff incorporates herein each and every allegation elsewhere in the Complaint as if fully set forth herein and further states as follows:

97.     Plaintiff's claim for disability discrimination is set forth in Count VII above which is specifically incorporated herein by reference. Said actions were also contrary to the ADA.

98.     Due to said discrimination and treatment, Plaintiff suffered damages as described elsewhere herein. Plaintiff claims all damages as allowed by law.

99.     Plaintiff all claims damages as described above at par. 46.

**DEMAND FOR JURY TRIAL**

100.    Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests that this Honorable Court grant the following relief:

A.      All damages as allowed by law, including lost wages, benefits and retirement;

B.      Enhanced compensatory damages;

C.      Liberal compensatory and punitive damages;

D.      Damages for all of the losses claimed above;

E.      All damages allowed by law;

F.      Reasonable attorney fees, interest and costs;

G.      An additional amount to be awarded to make up for the tax consequences of any settlement or verdict on the entire amount of the award including attorneys' fees, interest and costs; and,

H.      Such other and further relief as the Court deems equitable and just.

Respectfully submitted,

Estate of Michele M. Walker, Plaintiff
By its attorney

Dated:  August 30, 2011                    /s/ LESLIE H. JOHNSON
                                   Leslie H. Johnson, Esq., NH Bar #5545
                                   Law Office of Leslie H. Johnson, PLLC
                                   PO Box 265
                                   Center Sandwich NH 03227
                                   603.284.6600
                                   leslie@lesliejohnsonlaw.com

22