UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Estate of Michele M Walker,                     \*
Charles E. Walker, Administrator                \*
                                                \*
Plaintiff                                       \*
                                                \*
         v.                                     \*
                                                \*    Civil Action No. 1:11-cv-421-PB
State of New Hampshire – Administrative         \*
Office of the Courts and State of               \*
Hampshire – NH Second Circuit Littleton         \*
District Court – Administrative Office of the   \*
Courts                                          \*
                                                \*
Defendants                                      \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
## OF MOTION FOR SUMMARY JUDGMENT

The Defendants, State of New Hampshire – Administrative Office of the Courts and State

of New Hampshire – NH Second Circuit Littleton District Division – Administrative Office of

the Courts (hereinafter collectively referred to as "AOC"), by and through their counsel, the

Office of the Attorney General, submit the following memorandum of law in support of their

motion for summary judgment.

## FACTS

From July 1996 until her death on May 3, 2010, Michele M. Walker was employed by

AOC.  At the time of her death, she was the Clerk of the Littleton District Court.  *See* Ex. A

(Affidavit of E. Kelly).  During the relevant time period set forth in the Estate's Complaint,

winter of 2007 until August 20, 2009, two other AOC employees worked in the Littleton

Courthouse's Clerk's Office on a full-time basis.  *See id.*  Brenda Knapp was the Deputy Clerk

of the District Court and Lisa Towle was the Deputy Clerk for the Family Division.  *See id.*

1

All of the factual allegations set forth in the Complaint are based on notes, emails, and correspondence allegedly prepared by Ms. Walker.  *See* Ex. B at 110-111 (Deposition of C. Walker).  Charles Walker, the Administrator of the Estate, did not witness any of the conduct alleged in the Complaint.  *See id.*[1]  The factual allegations can be categorized into two main areas: (1) allegations of safety concerns based on the alleged conduct of Lisa Towle; and (2) allegations of sexual harassment based on the alleged conduct of Lyn Gilman, Lisa Towle, and Michelle Brown.  *See* Complaint at ¶ 13, 14.

On August 13, 2009, at 1:30 p.m., Michele Walker sent an email to Pamela Kozlowski, her direct supervisor.  *See* Ex. C.  Ms. Kozlowski was a District Court Administrator for the AOC and did not have an office at the Littleton District Court.  *See* Ex. D (Affidavit of P. Kozlowski).  Judge Edwin W. Kelly, Administrative Judge of the District Court, Jeff Smith, AOC's Operations Manager, Michelle Brown, Family Division Clerk, and Gina Apicelli, Family Division Administrator, were copied on the email.  *See* Ex. A.  In the email, Ms. Walker makes a "formal complaint" about how she is being treated by Lisa Towle.  *See* Ex. C.  The email states that Ms. Walker fears for her safety and that she has many statements and facts to present.  *See id.*  At 3:32 p.m., the same day, Ms. Walker sent a second email to the same individuals identifying alleged conduct on Lisa Towle's part that caused Ms. Walker to allegedly fear for her safety.  *See* Ex. E.  Ms. Walker described a birthday party in July where Ms. Towle looked at Ms. Walker and said she had a lot of knives at home with lots of names on them, as well as multiple instances where Ms. Towle allegedly got upset with Ms. Walker and yelled at her.  *See id.*  Ms. Walker also claimed that Lisa Towle copied her hair, clothes, and her image.  *See id.*

---

[1] At his deposition, Mr. Walker denied hearing any inappropriate sexual banter and/or witnessing Michele Walker subjected to any hostile work environment.  *See* Ex. B at 62, 92-93, 110-12.  Mr. Walker was employed as a security officer in the Littleton District Court from July 2002 until February 2008.  *See* Ex. F (Interrogatory #1).

2

In response to Ms. Walker's emails, Judge Kelly assigned Paula Hurley, a District Court Administrator, to travel to Littleton District Court the next day to investigate the allegations.  *See* Ex. A.  Ms. Walker was informed on August 13, 2009 that the matter would be reviewed immediately.  *See id.*  Ms. Hurley conducted an investigation.  *See id.*  The result of that investigation was not shared with Ms. Walker as, on August 20, 2009, Ms. Walker left work due to illness resulting in a hospitalization and subsequent medical leave from work.  *See id.*

While out of work on medical leave, Ms. Walker sent a letter, dated November 9, 2009, to Paula Hurley.  *See* Ex. G.  A copy of that letter was provided to Judge Kelly.  *See* Ex. A.  The letter set forth a series of sexual harassment allegations against co-workers at the Littleton Courthouse including Lyn Gilman, Lisa Towle, Michelle Brown.  *See* Ex. G.  It also claimed this conduct was witnessed by Brenda Knapp.  *See id.*  As a result of the letter, the AOC retained legal counsel, Julie Moore, and an out of state Human Resources individual, Christine Howe, to conduct an investigation into Ms. Walker's sexual harassment allegations.  *See* Ex. A.

On January 26, 2010, Ms. Walker filed a complaint with the Human Rights Commission setting forth the same allegations.  *See* Ex. H.  On January 12, 2010, Ms. Walker was interviewed by Christine Howe.  *See* Ex. I (Affidavit of Y. McAllister).  Ms. Walker presented a 24-page typed statement that she claimed provided a comprehensive summary of the allegations.  *See id.*  It is that summary, along with Ms. Walker's journal notes about Lisa Towle, which serves as the basis for the Estate's present complaint.  *See* Ex. F (Interrogatory Answer No. 13, Attachment to Interrogatory No.2 – Journals and Notes).[2]

On May 3, 2010, Ms. Walker committed suicide.  *See* Complaint at ¶ 43.  On December 29, 2010, the Estate amended her Human Rights Commission Complaint to allege that her death

---

[2] The Estate included multiple versions of Ms. Walker's 24-page statement to its interrogatory answers.  The defendants have included only one copy.

was due to the AOC's investigation of her sexual harassment claims. *See* Exhibit J. On February 11, 2011, the Estate withdrew its complaint at the Human Rights Commission and, on August 30, 2011, the Estate filed a Complaint with this Court. The Complaint alleges the following claims: Count I (RSA 354-A – gender discrimination, sexual harassment, hostile work environment); Count II (Title VII - gender discrimination, sexual harassment, hostile work environment); Count III (RSA 354-A – retaliation); Count IV (Title VII – retaliation); Count V (RSA 354-A – sexual orientation/discrimination/harassment); Count VI (RSA 354-A – marital status discrimination/harassment); Count VII (RSA 354-A – disability discrimination); and Count VIII (ADA – disability discrimination). The defendants hereby move for summary judgment with respect to all claims.

## STANDARD OF REVIEW

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue exists where a 'reasonable jury could resolve the point in favor of the nonmoving party.'" *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 515 (1st Cir. 2009) (quotation omitted). "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." *Estrada v. Rhode Island,* 594 F.3d 56, 62 (1st Cir. 2010) (citation omitted). "In opposing a motion for summary judgment, a plaintiff must proffer admissible evidence that could be accepted by a rational trier of fact as sufficient to establish the necessary proposition." *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662 n.3 (1st Cir. 2010)(quotation omitted). While a party may oppose summary judgment by proffering evidence which would not be admissible at trial, it must "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c).

## LEGAL ARGUMENT

### I.   PLAINTIFF'S CLAIMS ARE BASED ON INADMISSIBLE HEARSAY UNDER FEDERAL RULE OF EVIDENCE 807

Before addressing the substance of the Estate's specific claims, it is necessary to address the serious evidentiary deficiencies that exist.  A review of the evidence shows that the only evidence that can be read to support the claims constitutes inadmissible hearsay.  *See Hannon v. Beard*, 645 F.3d 45, 49 (1st Cir. 2011).  The Estate can only point to unsworn, uncorroborated statements where the defendants will never have an opportunity to depose or cross examine the speaker under oath.  "Generally, a party cannot make evidence for herself by her own self serving declarations."  *See* 31A C.J.S. Evidence §400 (2011).  Furthermore, Ms. Walker's unavailability, cannot by itself act to eliminate the requirement that the hearsay be "trustworthy." *See United States v. McCall*, 740 F.2d 1331, 1342 (4th Cir. 1984).

Based on Charles Walker's deposition and interrogatory answers, it is clear that the factual allegations are based on the following information:

(1)  Ms. Walker's unsworn self-serving 24-page declaration presented on January 12, 2010, in connection with AOC's investigation into her sexual harassment complaint.  This document was drafted with the assistance of her husband.  During her interview, Ms. Walker admitted that she destroyed documents she relied on in creating the declaration and that certain documents were missing; [3] and,

(2) Ms. Walker's handwritten dated notes kept in a spiral bound stenographer notebook first mentioned in the January interview and subsequently produced.[4] Although each note has a date, the dates are not in order, indicating that the entries were not written when dated.  Additionally, there is no reference to any

---

[3] On February 5, 2010, Michele Walker was interviewed by Christine Howe.  Ms. Walker's attorney, Rose Culver, was present.  The interview was tape recorded and transcribed.  *See* Ex. I.  Ms. Walker stated that "everything that needs to be said, was in the 24-page statement."  *See* Ex. K at 149.  Ms. Walker also stated that she relied on her November 9, 2009 letter in preparing the 24-page statement and, the November letter was prepared with her attorney's assistance.  *See id.* at 99, 102.

[4] In the interview, Ms. Walker stated that her husband, Charles Walker, wrote some of the notes regarding her meeting with Paula Hurley.  *See* Ex. K at 46.

sexual allegations.  Rather, the journal notes are limited to allegations of hostility Ms. Walker claims Lisa Towle imposed upon her.

Both of these categories of evidence are hearsay, or evidence containing multiple levels of hearsay.

The plaintiff will likely argue that the evidence is admissible under the "catch-all" provision, Rule 807.[5]  "That catchall rule permits the introduction of hearsay evidence, not otherwise admissible, as long as the declarant is unavailable, the evidence possesses 'circumstantial guarantees of trustworthiness,' and the trial court finds that the evidence (i) is offered to prove a material fact, (ii) is more probative on the point than other available evidence, and (iii) the interests of justice will be served."  *Colasanto v. Life Ins. Co. of N. Am.*, 100 F.3d 203, 213 (1st  Cir. 1996); *see also United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1279 (11th Cir. 2009)("Congress intended the residual hearsay exception to be used very rarely, and only in exceptional circumstances and it appl[ies] only when certain exceptional guarantees of trustworthiness exist and when high degrees of probativeness and necessity are present") (quotation omitted).

As the First Circuit has explained, "[t]he preconditions for deployment of [Rule 807] are formidable."  *See Colasanto*, 100 F.3d at 213.  In *Colasanto*, the Court held the statements at issue "lacked satisfactory assurances of trustworthiness. . . given that litigation was in the wind when [the statements] were made."  *Id.*  Similarly, in *United States v. Wright*, the Third Circuit held that a deceased person's statements to his criminal attorney were not admissible under Rule 807 where the trial court found the statements were self-serving and decedent had incentive to lie since he was under investigation.  *See* 363 F.3d 237, 245-46 (3rd Cir. 2004); *see also Polansky v.*

---

[5] As set forth in the Advisory Committee Notes, in 1997, "[t]he contents of Rule 803(24) and Rule 804(b)(5) have been combined and transferred to a new Rule 807.  This was done to facilitate additions to Rule 803 and 804.  No change in meaning is intended."

*CNA Ins. Co.*, 852 F.2d 626, 631 (1st Cir. 1988)(Appellate Court held that trial court improperly introduced into evidence a letter that was a self-serving statement written by a representative of the party who seeks its admission).

Here, Ms. Walker's statements fail to meet the threshold of "exceptional guarantees of trustworthiness," and as such, are inadmissible.  First, there is no evidence to corroborate the portions of her statements that go to the heart of her claims.  *See United States v. Panzardi-Lespier*, 918 F.2d 313, 316–17 (1st Cir. 1990).  Mr. Walker never witnessed any of the conduct complained by his wife.  *See* Ex. B at 110-112.  He testified that the key person who would support his wife's claim is Brenda Knapp and that if Michele Walker's allegations were true, Ms. Knapp would know about them.  *See id.* at 258.  Brenda Knapp disputes Michele Walker's claim that Lisa Towle treated her improperly and/or that Ms. Walker was subjected to sexual harassment at work.  *See* Ex. L.  (Affidavit of B. Knapp).  Ms. Knapp is one example of how Ms. Walker's allegations of improper conduct are directly contradicted and therefore such evidence does not have the requisite "circumstantial guarantees of trustworthiness" under Rule 807.

Second, the Court's inquiry into the trustworthiness of Ms. Walker's statements includes the circumstances in which the declarant made the statement and the incentive she had to speak truthfully or falsely.  *See United States v. Bailey*, 581 F.2d 341, 349 (3rd Cir. 1978).  Here, Ms. Walker had a self-serving motive in fabricating the factual allegations in her notes.  Ms. Walker first produced the 24-page statement on January 12, 2010 after retaining legal counsel and asserting a sexual harassment claim against her employer.[6]  *See* Ex. I.  At that meeting she referenced notes and calendar entries that were later produced.  *See id.*  These documents were

---

[6]  Approximately ten days later, on January 28, 2010, Ms. Walker filed her claim with the New Hampshire Commission for Human Rights.  *See* Ex. H.

not produced until Ms. Walker had made a decision to bring litigation and thus had a clear motive to speak falsely. *See Colasanto*, 100 F.3d at 213.

Ms. Walker also had an ongoing and well-documented hostility towards the court and the Family Division. *See* Ex. L. Michele Walker and Charles Walker both believed that the Family Division employees, Lisa Towle and Michelle Brown, were responsible for Mr. Walker being transferred out of Littleton District Court. *See* Ex. L; Ex. B at 101-02.[7] Ms. Walker had never been shy about complaining about the work of Ms. Towle and Ms. Brown. *See* Ex. D.

Third, the trustworthiness of the evidence is tainted by the fact that Ms. Walker destroyed evidence that may have supported or contradicted her assertions. In her interview, Ms. Walker admitted that she shredded documents in connection with her allegations. *See* Ex. K at 73. Additionally, in his response to interrogatories, Mr. Walker admitted that he taped at least one conversation he had with his wife. *See* Ex. B at 207. During his deposition he indicated that his wife got upset and he may have destroyed the tape. *See id.* Mr. Walker provided this testimony before he refused to answer any additional questions regarding the tape or tapes he made of his wife asserting a Fifth Amendment privilege. *See* Ex. B at 206-07.

Finally, Ms. Walker never made any allegations relating to sexual harassment until after she hired an attorney. *See* Ex. G. Ms. Walker had made numerous complaints about minor work issues. *See* Ex. D. She later escalated her complaints to include allegations that Lisa Towle was threatening her. *See* Ex. E. In fact, Ms. Walker sent an email of complaint to the court on August 13, 2009, where she included detailed allegations regarding Lisa Towle. *See id.* Despite this comprehensive and detailed account of allegations against Lisa Towle, Ms. Walker made no reference to the sexual misconduct allegations she made in the 24-page letter. *See id.*

---

[7] Q: "Who did you think was responsible for being moved out of the Littleton District Court? . . ." A: "Family division." Ex. B at 107. Q: "Did you share with [Ms. Walker] that you thought Michelle Brown and Lisa Towle were behind this?" A: "Yes, I'm sure I did."

Each of these statements lack "satisfactory assurances of trustworthiness" and should be excluded.  The unsworn statements of Ms. Walker cannot be considered for its truth because it is hearsay within hearsay and carries no "circumstantial guarantees of trustworthiness" equivalent to those of any recognized hearsay exceptions.  The Estate's reliance on this inadmissible evidence to support its claims warrants summary judgment in defendants' favor on all counts.

II.     **PLAINTIFF CANNOT MEET THE ELEMENTS OF HOSTILE WORK ENVIRONMENT UNDER STATE OR FEDERAL LAW (COUNTS I, II, V)**

The Estate has alleged that Ms. Walker was subjected to a hostile work environment for sexual discrimination under RSA 354-A (Count I) and Title VII (Count II), and for sexual orientation discrimination under RSA 354-A (Count V).  The elements of a hostile work environment claim are similar under both RSA 354-A and Title VII.  *See N.H. Dept. of Corr. v. Butland*, 147 N.H. 676, 679-80 (2002).

To establish a hostile work environment claim alleging co-worker discrimination, the Estate must demonstrate that: (1) Michele Walker was a member of a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based upon her sex (Counts I and II) or based upon her sexual orientation (Count V); (4) the harassment complained of was objectively and subjectively offensive and sufficiently severe or pervasive so as to materially alter the conditions of his employment and create an abusive work environment; and (5) some basis for employer liability has been established; *i.e.*, that the employer knew or should have known about the harassment but failed to take prompt and effective remedial action. *See Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir. 2002).

The Estate's claims fail because, as a matter of law, it cannot establish the third elements (harassment based on sex), the fourth element (the harassment was objectively offensive and sufficiently severe or pervasive so as to materially alter the conditions of his employment),

and/or the fifth element (the AOC failed to take prompt and appropriate remedial action).[8]

## A.      Sex-Based Discrimination

Plaintiff cannot establish the necessary elements of a hostile work environment claim because it cannot prove that the alleged harassment was based upon Ms. Walker's sex. "An offensive workplace atmosphere does not amount to unlawful discrimination unless one gender is treated differently than the other."  *Duncan v. GMC*, 300 F.3d 928, 933 (8th Cir. 2002); *see Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998)(finding workplace harassment does not automatically constitute discrimination "merely because the words used have sexual content or connotations.").

When a plaintiff alleges a hostile work environment based on sexual harassment, the critical inquiry is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris v. Forklift Sys.*, 510 U.S. 17, 25 (1993).  "Same-sex harassment claims differ from those between males and females because the latter 'typically involve[] explicit or implicit proposals of sexual activity,' which create a presumption that the underlying conduct was based on sex."  *Foss v. Circuit City Stores, Inc.*, 521 F. Supp. 2d 99, 108 (1st Cir. 2008)(citation omitted).  "However, this presumption is applicable [in same-sex harassment cases] only if there is credible evidence to show that the alleged harasser is sexually attracted to the plaintiff." *Id*.

The United States Supreme Court described the three evidentiary routes in which a plaintiff may establish that alleged same-sex discrimination is "because of" or "based on" sex: (1) as stated above, if there is credible evidence that the harasser is homosexual; (2) "if a female

---

[8] With regard to the first, and second, AOC stipulates to element one—finding Ms. Walker was a member of a protected class.  AOC does, however, challenge the second element—subject to *unwelcome* sexual and/or sexual orientation harassment—although they recognize this is a factual dispute and may not be appropriate for summary judgment.  Even here, the Estate can rely only on hearsay that lacks any circumstantial guarantee of trustworthiness.

victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace"; or (3) "direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."  *Oncale*, 523 U.S. at 80–81. "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations,  but actually constituted '*discrimination* . . . because of . . . sex." *Id*. at 81 (alteration and emphasis in original).

Here, Plaintiff has not offered any evidence that the harassers were "motivated by general hostility to the presence of women in the workplace"; nor has she offered any evidence comparing the harasser's treatment of members of both sexes.  Of the three "evidentiary routes" announced in *Onscale*, plaintiff purports to avail herself only to the first: that is, she contends her harassers were homosexual, and the harassment she endured was "based on sex" because of one alleged harasser's sexual desire for her.

On her theory, however, plaintiff's presentation is frail.  In her Complaint, plaintiff alleges twenty-four separate incidents of "harassment."  *See* Complaint ¶13–14 (i.e. female coworkers repeatedly and openly discussing participating in homosexual activities; female coworkers bringing in and showing pictures of homosexual parties; sexual comments made between female coworkers about a judge; female coworkers making sexually offensive jokes). The only evidence substantiating these claims is plaintiff's 24-page letter submitted by the plaintiff in January 2010.  Nonetheless, notwithstanding the lack of evidentiary support, even assuming the facts as alleged within the Complaint, none of the alleged incidents indicate that the "harassment" was directed at plaintiff "because of" or "based on" her gender.  *See Padqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 517 (11th Cir. 1996)(finding harassment inflicted

without regard to gender, such as office gossip, is not actionable because the harassment was not

based on sex); *Oncale*, 523 U.S. at 80-81 (Title VII does not prohibit all verbal or physical

harassment in workplace; plaintiff must show conduct was not "merely tinged with offensive

sexual connotations, but actually constituted discrimination because of sex.").  Accordingly, the

Estate cannot establish that Michele Walker was discriminated against based on her sex.

## B.    <u>Severe And Pervasive</u>

The Estate also cannot establish that any harassment Ms. Walker experienced was so

objectively offensive and severe or pervasive that it materially altered the conditions of her

employment and created an abusive work environment.  Discrimination laws are designed to

protect employees well before they are harassed to the point of intense mental distress.  *See*

*Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  However, "the work place is not a cocoon,

and those who labor in it are expected to have reasonably thick skins."  *Rosario v. Dep't of Army*,

607 F.3d 241, 247 (1st Cir. 2010)(quotation omitted); *Faragher v. City of Boca Raton*, 524 U.S.

775, 788 (1998)(noting that "simple teasing, offhand comments, and isolated incidents (unless

extremely serious)" do not amount to a hostile work environment).

The Estate must show that the conduct was not only subjectively objectionable, but also

(1) objectively offensive and hostile from the standpoint of a reasonable person, and (2) so

severe or pervasive that it materially altered the conditions of her employment.  *See Meritor*

*Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986).  The "objective" element guards employers

from the "hypersensitive employee."  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1483 (3rd

Cir. 1990).  As a result, the factors and circumstances indicating objectively offensive conduct

"tend to be extreme," *Hadden v. Tex. Rehab. Comm'n*, 2005 WL 3078608, at *8 (S.D.Tex. Nov.

16, 2005), and should be evaluated using "common sense, and an appropriate sensitivity to social

context, to distinguish between such innocuous behavior and severely hostile or abusive

conduct." *Kosereis v. Rhode Island*, 331 F.3d 207, 216 (1st Cir. 2003)(citation omitted).

    In the present case, the alleged "harassment" occurred over a two year period.  *See*

Complaint at ¶ 13.  The Complaint cites only two specific sexual comments made during that

period neither of which was directed to Ms. Walker (i.e., "I can still land a guy in his twenties"

and "I gave the bailiff a blowjob and he never had it done with a tongue ring before.").  *See*

Complaint at ¶ 13 (d).  It also references a limited number of specific conduct allegedly made on

the part of Michelle Brown including Ms. Brown discussing sexual feelings for a judge and

asking if Michele Walker's husband could still get it up, *see* Complaint at ¶ 13(e)(j)(k)(l);[9] as

well as two specific instance of alleged conduct on Lyn Gilman's part: (a) a sexual joke was sent

via email; and (b) Ms. Gilman allegedly showed Ms. Walker her belly ring and asked if she

wanted to see her nipple rings.  *See* Complaint at ¶ 13(e)(g).

    The remaining conduct in the Complaint is general in nature: (a) requests by coworkers to

participate in homosexual activity; (b) coworkers discussing homosexual activity with each

other; and (c) coworkers showing pictures of homosexual parties.  The plaintiff provides no dates

of any such events.  The journals and notes that the Estate relies upon provide no further

information in this regard.  Rather, the journals and calendars set forth specific dates, including

the time period where the alleged sexual harassment occurred, and cite no sexual comments.[10]

In addition to the allegations in the Complaint, the 24-page statement prepared by Michele

Walker discusses only limited instances in the workplace where Michele Walker claims she was

---

[9] The Complaint alleges that Ms. Walker answered the Family Division phone for absent coworkers and a male voice said "Hello, Mrs. Blowjob.  You were good last night."  *See* Complaint at ¶ 13(h).  Clearly, the AOC cannot be responsible for sexual comments made by unidentified individuals who do not work for them.

[10]  The journal/calendar time periods are from April 2008 – November 15, 2009.  *See* Exhibit F.

13

subjected to allegedly unwelcome sexual conduct.  There is an allegation that when Michelle

Brown ordered a hamburger, she would say she wanted a big one.  Lisa Towle, Michelle Brown,

and Lyn Gilman would check men out as they came to the court and comment about them.  Lisa

Towle announcing she had sex with an individual on New Year's Eve.  Even viewing the facts in

the light most favorable to the Estate, the alleged conduct is not objectively offensive and hostile.

*See Carmona-Rivera v. Puerto Rico*, 464 F.3d 14, 19 (1st Cir. 2006).

    Many decisions throughout the federal circuit courts have rejected sexual-harassment

claims finding the conduct did not meet the "severe and pervasive" element when based on

conduct that is more serious than the conduct at issue in this case.[11]  In *Baskerville v. Culligan

Int'l Co.,* the Court held nine instances of offensive behavior over seven months including

repeated references to plaintiff as a "tilly" and a "pretty girl" and one instance of simulated

masturbation was insufficiently severe or pervasive to support a hostile-environment claim.  *See*

50 F.3d 428, 430 (7th Cir. 1995).

    In addition, the majority of the sexual comments alleged in the Complaint are not

directed at Michele Walker.  In *Black v. Zaring Homes, Inc.,* 104 F.3d 822, 826 (6th Cir. 1997),

the Court reversed a jury verdict and found conduct was "sex-based" but insufficiently severe or

pervasive to state actionable claim, where conduct over a four-month period involved repeated

sexual jokes; one occasion of looking plaintiff up and down, smiling and stating, there's

---

[11] *See Shepherd v. Comptroller of Pub. Accounts of Texas,* 168 F.3d 871, 872-75 (5th Cir.1999)(holding that several incidents over a two-year period, including comment "your elbows are the same color as your nipples," and attempts to look down the plaintiff's dress, were insufficient to support hostile-environment claim); *Adusumilli v. City of Chicago,* 164 F.3d 353, 361-62 (7th Cir.1998)(holding actions insufficient to support hostile environment claim where co-employees teased plaintiff, made sexual jokes aimed at her, commented about her low neck tops, repeated staring at her breasts with attempts to make eye contact, and four incidents of touching her arm, fingers or buttocks); *Galloway v. General Motors Serv. Parts Operations,* 78 F.3d 1164, 1167-68 (7th Cir.1996)(holding offensive comments including repeatedly calling the plaintiff a "sick bitch" insufficient because not necessarily gender-related); *Weiss v. Coca-Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir.1993); *see also Indest v. Freeman Decorating, Inc.,* 164 F.3d 258, 264 (5th Cir.1999)("All of the sexual hostile environment cases decided by the Supreme Court have involved patterns or allegations of extensive, longlasting, unredressed, and uninhibited sexual threats or conduct that permeated the plaintiffs' work environment.").

"Nothing I like more in the morning than sticky buns"; suggesting land area be named as "Titsville" or "Twin Peaks"; asking plaintiff, "Say, weren't you there [at a biker bar] Saturday night dancing on the tables?"; stating, "Just get the broad to sign it"; telling plaintiff she was "paid great money for a woman"; laughing when plaintiff mentioned the name of Dr. Paul Busam, apparently pronounced as "bosom."  The Court held that the fact that most of the sex-based comments were not directed at the plaintiff contributed to its conclusion that the conduct was not severe enough to create a hostile work environment.  *See id.*

Accordingly, as a matter of law, plaintiff's conduct does not constitute conduct that is objectively hostile and severe or pervasive.  Therefore, plaintiff cannot satisfy all of the elements of her hostile work environment claims, and as a result, the AOC is entitled to summary judgment on Counts I, II and V.

**C.**     **Remedial Action**

The Estate cannot establish the necessary elements of a hostile work environment claim because the AOC took prompt and appropriate remedial action in light of the circumstances.

To establish employer liability for a non-supervisory co-employee, "the plaintiff must demonstrate that the employer knew or should have known about the harassment yet failed to take prompt and appropriate remedial action." *Wilson v. Moulison North Corp.*, 639 F.3d 1, 7 (1st Cir. 2011) "[T]he standard by which an employer's conduct is measured is one of reasonableness.'"  *Moore v. Dartmouth College*, No. 99-37 M, 2001 U.S. Dist. LEXIS 17415, at *19 (D.N.H. 2001).  Negligence by an employer in fashioning a remedy to co-employee discrimination is insufficient to establish employer liability in that such liability is incurred only if the remedy demonstrates such indifference as to indicate an attitude of permissiveness that amounts to discrimination.  *Id.* (citation omitted).  An employer cannot be found liable once it

has "in good faith taken those measures which are both feasible and reasonable under the circumstances to combat the offensive conduct." *DeGrace v. Rumsfeld*, 614 F.2d 796, 805 (1st Cir. 1980).

The following factors are relevant in considering the reasonableness of an employer's response to discrimination and/or harassment in the workplace: (1) whether the employer was successful in stopping such conduct; (2) the timeliness of the plaintiff's complaint(s); (3) the promptness of the employer's response; and (4) whether that response was proportional to the seriousness and frequency of the harassment. *Moore*, 2001 U.S. Dist. LEXIS 17415, at *20. "'Prompt remedial action' must be 'reasonably calculated' to end the harassment." *Skidmore v. Precision Printing and Packaging, Inc.*, 188 F. 3d 606, 615 (5th Cir. 1999). What constitutes prompt remedial action depends on the facts of the case; "not every response by an employer will be sufficient to discharge its legal duty." *Id.* at 615 (quotation omitted).

Here, in the first instance, the conduct was not so severe or pervasive to put the State on constructive notice of the harassment. Thus, for purpose of responding with prompt, remedial action, the State was first informed of "sexual" harassment upon plaintiff's November 9, 2009 written sexual harassment complaint letter. Upon receiving the written complaint, the court then initiated an investigation involving Christine Howe ("Investigation #2). The above circumstances establish the promptness and reasonableness of the AOC's response to plaintiff's complaint and that such response was proportional to the gravity of the alleged harassers' conduct. As a result, any personal distress that plaintiff suffered cannot be attributed to any actual, ongoing, hostile environment based on sex from which the AOC unreasonably failed to protect against. Accordingly, Plaintiff cannot establish the elements of a hostile work environment claim, and the AOC is entitled to judgment as a matter of law on Counts I, II and V.

III.   **CLAIMS RELATED TO LISA TOWLE DO NOT STATE VIABLE CAUSE OF ACTION OF DISCRIMINATION AND/OR RETALIATION**

In Paragraph 14 of the Complaint, the Estate alleges that, in addition to sexual harassment, she was "subjected to a hostile work environment and retaliation."  In support the Estate describes a number of events involving Lisa Towle including allegations that Towle became aggressive towards her; called her a bitch; yelled and screamed at her on numerous occasions; and that Towle stated to Ms. Walker: "I hate you," "You're such a princess," and "I don't have to listen to you."  *See id.* at  ¶14.  The Estate claims that Towle became so angry with Michele Walker that she feared for her safety at work.

Despite these allegations, the Estate fails to demonstrate how these alleged events relate to her claims that she was subjected to a hostile work environment based on sexual discrimination, gender discrimination, sexual harassment discrimination, marital status discrimination, or disability discrimination.  *See* Counts I, II, V-VIII.  Nor does the Estate link any of the allegations in ¶ 14, which predate her sexual complaints to AOC, to her claims of retaliation.

Even if the allegations related to Towle somehow fit into the various counts of harassment or retaliation, the Estate stills fails to prove that Towle's actions are sufficient to state a claim.  Specifically, the Estate fails to prove that Towle behaved toward plaintiff because of her sex; that Towle's behavior toward plaintiff was objectively and subjectively offensive and sufficiently severe or pervasive enough to create a hostile work environment; and that plaintiff's employer knew or should have known but failed to take effective remedial action.  *See Crowley*, 303 F.3d at 395.

The Estate cannot establish that its allegations related to Towle were based on sex.  *See Oncale*, 523 U.S. at 81.  Here, not only does the Estate fail to allege that Towle discriminated

against Walker because of her sex, but it also fails to allege any facts that Towle's conversations and interactions with Walker were sexual in nature.  While the First Circuit has explained that conduct not explicitly sexual in nature, "should be considered along with overtly sexually abusive conduct in assessing a hostile work environment claim," *O'Rourke v. City of Providence*, 235 F.3d 713, 729 (1st Cir. 2001),  here the plaintiff has not made any attempt to link Towle's alleged conduct to her allegations about sexual conduct.

The Supreme Court explained, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview." *Harris,* 510 U.S. at 21. The plaintiff's allegations regarding Towle, if true, certainly are outside a standard of general civility. Nevertheless, not every instance of verbal harassment can be sanctioned as, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discrimination … because of … sex.'" *Oncale*,  523 U.S. at 80.  Here, the allegations do not rise to the level of creating a hostile work environment under Title VII or RSA 354-A.

Additionally, plaintiff alleges that Towle engaged in improper activities during work hours, such as discussing the personal problems she had with her ex-husband, discussing her personal legal problems with her attorney, reviewing confidential financial information, and shopping online.  Because these actions were not actually directed at plaintiff, these acts should not have affected plaintiff's work environment, and certainly not to the point of creating a hostile work environment. *See Black,* 104 F.3d at 827.

## IV.   ESSENTIAL ELEMENTS OF A RETALIATION CLAIM UNDER STATE OR FEDERAL LAW (COUNTS III, IV) CANNOT BE MET

Under RSA 354-A and Title VII, to establish a retaliation claim a plaintiff must demonstrate that: (1) she reported or otherwise opposed conduct prohibited by RSA 354-A or

Title VII; (2) she suffered an adverse, job-related action; and (3) there is a casual link between her opposition to unlawful discrimination and the adverse action. *See Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 57 (1st Cir. 2000); *Majeda v. MPB Corp.*, 149 N.H. 371, 378 (2003).

Plaintiff cannot establish the necessary elements of a retaliation claim as she has not alleged that she suffered "an adverse, job-related action."  Plaintiff essentially alleges three forms of "retaliatory" conduct: (1) retaliatory harassment—coworkers screamed at her, encroached her personal space and took "further hostile actions," failed to initially investigate her complaints; (2) initiating an investigation—ultimately by conducting "shoddy, hostile and partial investigation"; and (3) refusing "to allow [her] to return to work in accordance with her doctor's orders, specifically because the investigation was" incomplete.  Complaint at ¶¶61–63.[12]

"Adverse employment action" includes "ultimate employment decisions such as hiring, discharging, promoting or compensation." *See Majeda*, 149 N.H. at 379.  In cases where plaintiff has demonstrated "severe and pervasive" harassment as to alter the terms and conditions of her employment, she may meet the element of "adverse employment action" from merely tolerating that co-worker retaliatory harassment.  *Id.* at 380.  However, this is not the case under these facts. Accordingly, to the extent the Estate contends that Ms. Walker's toleration of retaliatory harassment constitutes "adverse employment action," the claim must fail as it cannot demonstrate she was subjected to "severe and pervasive" harassment.

As to the second alleged retaliatory conduct—initiation of the investigation—this argument must fail as a matter of law.  *See Blackden v. Stanley*, Civ. No. 02-475-M, 2003 U.S.

---

[12] Plaintiff specifically alleges the retaliation was in response to her complaints about gender discrimination/sexual harassment.  She does not allege the retaliation resulting from complaints of discrimination based on sexual orientation, marital status, or disability.  Moreover, conduct alleged on the part of Lisa Towle occurred prior to the reporting of any sexual harassment.

Dist. LEXIS 23487, at *23-24 (D.N.H. 2003)(finding investigation did not constitute adverse employment action where investigation did not lead to any reduction in salary, benefits, or status).

Moreover, the third alleged retaliatory conduct—AOC's refusal to allow plaintiff to return to work—does not constitute an "adverse employment action" under these circumstances as plaintiff was placed on paid leave.  At least five circuit courts have held that placement on administrative leave, with pay, during an investigation does not constitute an adverse employment action.  *See e.g., Joseph v. Leavitt*, 465 F.3d 87, 90–91 (2d Cir. 2006).[13]

## V. DISABILITY DISCRIMINATION CLAIMS CANNOT STAND AS MS. WALKER WAS NOT DISABLED NOR REQUESTED REASONABLE ACCOMODATIONS

In the Complaint, the Estate claims that Ms. Walker's disability "was emotional distress and anxiety, leading to depression and the conditions described in her medical records, and ultimately her suicide."  *See* Complaint at ¶ 87, 97.  The Estate claims that, presumably as a result of her alleged disability, she was subjected to a hostile investigation of her sexual harassment claim; told not to file for workers compensation benefits; and denied her request to return to work with reasonable accommodations.  *See* Complaint at ¶¶ 89-92; 97.  Even accepting as true the fact that Ms. Walker suffered from a mental illness during the relevant period of time (August 2009-May 2010), the Estate cannot establish the necessary elements under either state or federal law for disability discrimination.

On August 26, 2009, Charles Walker faxed to AOC a letter, dated August 22, 2009, from Dr. Cassie Karlsson which stated that Michele Walker had been hospitalized for medical

---

[13] *Citing Singeltary v. Mo. Dep't of Corr.*, 423 F.3d 886, 889, 892 (8th Cir. 2005); *Peltier v. United States*, 388 F.3d 984, 986, 988 (6th Cir. 2004); *Breaux v. City of Garland*, 205 F.3d 150, 154–55, 158 (5th Cir. 2000); *see also Testa v. Town of Madison*, Civ. No. 04-185-B-W, 2005 U.S. Dist. LEXIS 44531 at *34 (D.Me. 2005)(finding "suspension with pay pending an administrative investigation, or "administrative leave," is generally regarded not to be an adverse employment action").

treatment and required a one-month leave of absence from work.  *See* Ex. N.  On September 9, 2009, Ms. Walker requested to use sick leave time through September 25, 2009.  *See* Ex. O.  Dr. Karlsson had completed a FMLA form indicating that Ms. Walker sustained an acute illness that commenced August 17, 2009 and that she was unable to perform her job functions due to the condition.  *See* Ex. P.  On October 20, 2009, Ms. Walker requested to be able to continue to use her sick leave through November 30, 2009.  *See* Ex. Q.  Dr. Karlsson completed FMLA documentation indicating that Ms. Walker was unable to work as she was unable to interact with other employees.  *See* Ex. R.

On November 9, 2009, Ms. Walker sent a letter to Paula Hurley at AOC setting forth her allegations of sexual harassment against her co-workers.  *See* Ex. G.  On November 20, 2009, Ms. Walker sent a letter to AOC enclosing a letter from her health care provider and stating that she planned to return to work on December 8, 2009 with a modified work schedule.  *See* Ex. S.  Ms. Walker also requested "to have a door installed in the existing doorway between the Family Division Room and District Court area."  *See id.*  In response, on December 4, 2009, Attorney Julie Moore sent a letter requesting that Ms. Walker's medical provider complete a questionnaire related to her ability to return to work.  *See* Ex.T.

On December 9, 2009, Carey Brodzinski, a nurse practitioner at Dartmouth Hitchcock, completed the questionnaire.  *See* Ex. U.  She stated that Ms. Walker had a mental impairment of anxiety.  In response to the question, "Does Ms. Walker's impairment substantially limit any major life activities[]," Ms. Brodzinski answered "No."  *See id.*  She also stated "not applicable" in response to the expected duration of Ms. Walker's impairment.  Ms. Brodzinski answered "yes" in response to the question, "Please note that earlier documentation from Ms. Walker's

physician indicated that Ms. Walker was 'unable to interact with other employees,' is she now able to interact effectively with other employees?" *See id.*

"The Americans with Disabilities Act is a Federal antidiscrimination statute designed to remove barriers which present qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities." *Presutti v. Felton Brush*, 927 F. Supp. 545, 547 (D.N.H. 1995)(citation omitted). RSA 354-A, employs similar language to the Americans with Disabilities Act ("ADA"). *See Duhy v. Concord Gen. Mut. Ins. Co.*, No. 1:08-cv-00192-JL, 2009 U.S. Dist. LEXIS 48688, at *21. In this case, the Estate fails to meet the requisite elements under both the federal and state statutes.

"[W]hether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999)(citation omitted). To maintain a claim under the ADA, the plaintiff bears the initial burden of establishing that she was disabled as that term is defined by the ADA. *See Nedder v. Rivier College*, 944 F.Supp. 111, 115 (D.N.H. 1996) (quotation omitted). "Disability is a term of art under the ADA." *Presutti*, 927 F.Supp. at 548. It means: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such impairments; or (c) being regarded as having such impairment. *See Sutton*, 527 U.S. at 478.

According to her own medical practitioners, at the time Michele Walker sought to return to work in December 2009, she did not have a mental impairment that substantially limited a major life activity. Ms. Bordzinski represented that Ms. Walker suffered from a mental impairment but specifically stated that it did *not* substantially limit any major life activities. Even if Ms. Bordzinki had identified a disability, "[i]nteracting with others, as a major life activity, is not substantially limited just because an individual has some trouble getting along

with a supervisor or coworker."  *See Stauffer v. Bayer Corp*, 1997 U.S. Dist. LEXIS 14468 at

*18 (citation omitted).

The Estate's claim of perceived disability must fail as a matter of law as well.  "The ADA

protects an employee from discrimination based on the employer's mistaken impression that he

is disabled."  *See Hess v. Rochester Sch. Dist.*, 396 F. Supp. 2d 65, 75 (D.N.H. 2005)(citation

omitted).  To maintain a claim based on a perceived disability, the employee must prove that the

employer mistakenly believed the employee had an impairment that substantially limited one or

more major life activities or the employer mistakenly believed that the employee's actual but

nonlimiting impairment did limit one or more major life activities."  Here, there is simply no

evidence that AOC mistakenly believed that Ms. Walker had an impairment that limited a major

life activity.

Even if Ms. Walker qualified as disabled under the ADA, which she does not, her

requested accommodation, placement of a door between the Littleton District Court and Littleton

Family Division, was not reasonable.  "An employee who alleges that she would be able to

perform the essential functions of her job with a reasonable accommodation has the burden of

identifying an accommodation, as well as demonstrating that it is reasonable."  *See Paleologus v.*

*Rehab Consultants*, 990 F. Supp. 1460, 1467 (N.D. Ga. 1998)(citation omitted).

In this case, Ms. Walker's request to be segregated from Lisa Towle, a co-worker, by the

installation of a door in the workspace is not reasonable.  Even presuming for argument sake that

Ms. Walker's allegations regarding harassment by Ms. Towle were credible, "courts have found

that there exists no authority for the proposition that cessation of harassment is a required

reasonable accommodation."  *See Schwarzkopf v. Brunswick Corp.*, 833 F.Supp. 2d 1106, 1123

(D. Minn. 2011)(citations omitted).  "An employer is not required to reassign an employee away

from any supervisor or coworker who may cause stress or conflict." *See id.* "[A]n employer is not required to provide an aggravation-free or stress-free environment." *Newby v. Whitman*, 340 F. Supp. 2d 637, 657 (M.D.N.C. 2004)(citation omitted). "The Court of Appeals for the Third Circuit has also noted that by asking to be transferred away from individuals who cause [the employee] prolonged and inordinate stress, the plaintiff is essentially asking this court to establish the conditions of his employment, most notably, with whom he will work. However, nothing in the ADA allows this shift in responsibility." *Id.* Here, the request that Ms. Walker be isolated from a co-worker was not reasonable as a matter of law.

## V.   THE PLAINTIFF'S CLAIM FOR MARITAL STATUS DISCRIMINATION IS PROCEDURALLY BARRED

In Count VI, the Estate claims that Ms. Walker was "discriminated against on the basis of her marital status." *See* Complaint at ¶ 81. In support of that claim, the Estate alleges that, when Michele Walker married Charles Walker, "the couple had to make a choice as to who would remain working at the Littleton Court" because of a court system policy whereby married couples cannot work at the same location. *See id.* at ¶ 82.

As a preliminary matter, the claim is barred by the statute of limitations and the Estate lacks standing. Under RSA 354-A, "[a]ny complaint filed pursuant to this section by an *aggrieved* person must be filed within 180 days after the alleged act of discrimination." RSA 354-A:21, III (emphasis added). Here the alleged act of discrimination occurred on March 5, 2008—Mr. Walker's resignation after refusing reassignment. *See* Ex. A. This Complaint, however, was not filed until August 30, 2011; more than three years after the statute of limitations expired.

Also, because Ms. Walker remained at the court she suffered no injury and thus, does not constitute an "aggrieved" party. Instead, only Mr. Walker has standing to raise this claim. *See*

*State v. Hunes*, 159 N.H. 187, 197–98 (2009)(finding "aggrieved" party must have a direct and particularized interest to confer standing in claims brought under RSA 354-A).[14]

Even if the Estate could overcome the standing and timing issues, the Estate fails to allege any facts establishing AOC discriminated against the Walkers as a result of their status as married persons. Rather, AOC was merely enforcing its lawful policy which prohibits two married persons from work in the same location.  Ex. M.  As such, enforcing a lawful employment policy does not constitute "adverse employment action" as the Legislature was not likely manifesting an intent to prohibit anti-nepotism or no spouse policies.  *See Miller v. C.A. Muer Corp*., 420 Mich. 355, 362 (Mich. 1984)("Absent a more specific manifestation of legislative intent, we conclude that the prohibition of employment discrimination on the basis of 'marital status' was not meant to protect a right to be employed in the same department as one's spouse.").   As such, Count VI fails as matter of law.

<u>**CONCLUSION**</u>

For the reasons set forth above, the defendants respectfully request that this Honorable Court grant summary judgment in their favor on all counts.

---

[14] Moreover, Mr. Walker admitted that no harm resulted from the AOC's enforcement of its policy as he planned to leave the court system because of his marriage to Ms. Walker.  See Ex. B at 99-100 ("I was just leaving the court system right after – prior to us getting married, because I didn't think it was such a good idea . . . . I just felt that once we were married, I should leave.").

Respectfully submitted,

State of New Hampshire – Administrative Office of the Courts and State of Hampshire – NH Second Circuit Littleton District Court – Administrative Office of the Courts

By their attorney,
MICHAEL A. DELANEY
ATTORNEY GENERAL


Date:  September 4, 2012          /s/ Mary Ann Dempsey                          
                                 Mary Ann Dempsey
                                 NH Bar No. 13123
                                 Senior Assistant Attorney General
                                 New Hampshire Attorney General's Office
                                 33 Capitol Street
                                 Concord, New Hampshire 03301-6397
                                 Telephone:  (603) 271-3650
                                 Email:  mary.dempsey@doj.nh.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically served upon Leslie H. Johnson, Esquire.

                                 s/ Mary Ann Dempsey                          
Date: September 4, 2012          Mary Ann Dempsey