

**Employment Practices Group**

*Defining employers' rights in the workplace*

<u>By Electronic and U.S. Mail</u>

December 14, 2009

Rose M. Culver, Esq.
Law Office of Rose M. Culver
18 North Main Street, Suite 301
Concord, NH 03301

Re:   *Michele Marie Walker/Littleton District Court*

Dear Rose:

I was disappointed to receive your email sent on Friday, December 11, 2009, at 11:18 a.m. concerning the investigation into Michele Walker's claims of sexual harassment.

The Court's goal is to conduct a prompt and thorough investigation into your client's claims. They are serious, and the Court takes them seriously. I am sure your client seeks a full and fair investigation as well.

I want to recap our recent communications and move forward in a positive manner, without undue disruption or distraction.

On Friday morning, I was informed that you, together with Michele and her husband Chuck, arrived at the Common Man in Plymouth at 9:35 a.m. expecting Michele to be interviewed. As you will recall, you sent me an email at 2:46 p.m. on Thursday, December 10th, advising me: "I need more time with my client prior to meeting with the Court's investigative team. We would like to schedule an appointment for after the holidays. Please let me know what works for all of you." An hour later, we spoke, at approximately 4:00 p.m. In that conversation, you reiterated, in no uncertain terms, that your client would not be participating in an interview the following day. In fact, my notes of that conversation confirm that you told me that your client needs to be prepared for the meeting and needed more time, consistent with your earlier email. I questioned why the tape recording, which you had known about seven (7) days earlier, would change the preparation. In our conversation, you became agitated and said that Michele is "being treated like a defendant," "she's put on the spot," and "she doesn't feel comfortable putting something on the record because she's not prepared." You then said that "it took two days for [me] to get back to [you]" regarding the interview. You said that the tape recording "changes the preparation." You characterized the situation as "not fair."

1

After hearing your position, I advised you that the investigator (Christine Howe) had been retained, that she had cleared her calendar for Friday, and that the investigation would move forward, if necessary, without your client's cooperation. I told you that other interviews were scheduled to take place on that Friday, and that your client's lack of cooperation would not be a deterrent to the Court continuing its investigation, as it is obligated to do, in a prompt and thorough manner. When you asked me if the interview would be rescheduled, I told you that I did not know if and when, as I needed to confer with the Court about it.

I advised you that I had other clients waiting for me to begin a 4:00 p.m. meeting, but that we could talk further later in the afternoon/evening. I urged you to reconsider cancelling the interview and asked that you contact me on my cell phone number, which you have, or by email. I said that, as it stood at the time of our conversation, the Court would not expect your client to be at the 9:30 a.m. interview.

At no time prior to 9:30 the following morning did you indicate to me that your client would show up at the interview. I received no phone call or message after that call. I received no email after that call.

When your client did arrive at the Common Man on Friday, the investigator, Christine Howe, was surprised, to say the least. She contacted the Court who, in turn, contacted me. Because I did not hear from you on Thursday evening, naturally I did not travel to Plymouth. Instead, I went to a client site in western Massachusetts for a meeting that was scheduled to commence at 9:30 a.m.

I was in touch with the Court and Ms. Howe about the now precarious situation that the investigator was in. You knew that the Court was represented by counsel – me -- and, yet, you failed to tell me that you changed your mind and now would have your client interviewed. That was not fair or appropriate. You had an obligation to inform me in a timely manner that your client was willing to be interviewed on Friday. The Court is a represented party, and it has every right to have me present for the interview. I was not planning to travel to Plymouth on Friday morning, following our conversation at 4:00 p.m. on Thursday, and I advised the Court as such. Certainly, it was not reasonable for the investigation to take place at 9:30 a.m. on Friday, when I was not present to represent the Court's interests. You did call me five (5) times that morning, once at 10:21 a.m., and four (4) times between 10:39 a.m. and 10:41 a.m., but I was unable to take your calls, as I was with another client and could not be interrupted at that point.

In your last email to me at 10:41 a.m., you advised me that you were "shocked" to see that I was not in Plymouth at 9:30 on Friday morning. As I have said, it was clear from our last conversation on Thursday afternoon at 4:00 p.m. that your client was unwilling to keep the appointment which had been scheduled far in advance – there was no ambiguity in your position. You even told me in your email that your client agreed "last night" to come to the interview. You did not give me the courtesy of advising me that your client had changed her mind so that I could plan to be in Plymouth.

Further, you have now told me that you would not be meeting with the investigator at any point "[this] week," as the matter "has gone far enough." It is unclear to me if your client is refusing to only meet this week – or ever. You further state, "It is unfortunate, at best, that someone in [Michele's] position who has been violated has to put up with this kind of treatment by her employer. We have confirmed for ourselves this morning that this has continued to be a hostile process for Michele."

Rose, let me review the history of our communications so that you may have the opportunity to further assess the situation and agree that this is not and has not been a hostile process for Michele. The Court has made reasonably diligent attempts to hear your client's story and investigate her allegations of sexual harassment:

- On Wednesday, December 2, I called you and left a message, indicating that I was representing the Court and wanted to speak to you about Michele Walker's employment.

- On Thursday, December 3, we had a phone conversation about the Court's investigation into complaints of sexual harassment.

- On Thursday, December 3, at 4:15 p.m., I emailed you and confirmed that the Court is in the process of securing an <u>impartial outside investigator</u>, and I asked you if your client would be available on Friday, December 11, if the investigator was also available then. I raised the issue of interim measures while the investigation was on-going and asked for your client's input.

- On Thursday, December 3, at 4:17 p.m., you emailed me and advised that Michele was willing to meet with the investigator on Friday, December 11.

- On Thursday, December 3, at 4:34 p.m., you emailed me and confirmed that your client would be available for a full-day interview on Friday, December 11, and you asked for a possible meeting location.

- On Thursday, December 3, at 4:35 p.m., I advised you that I was still waiting for the Court to secure an appropriate off-site location.

- On Friday, December 4, at 5:34 p.m., I sent you an email advising that the Court had secured an <u>independent investigator</u> and that Michele would be interviewed on Friday, December 11, likely at 9:00 a.m., at a still-to-be-determined location. I advised you that the investigator *would be tape recording* the interview, as that is her standard practice, and that she has hand mobility issues, rendering her unable to take copious notes.

- On Monday, December 7, you called me and asked for the name of the investigator. I told you that I would speak with the Court and get back in touch with you. You said nothing about the tape recording.

3

- On Monday, December 7, at 4:19 p.m., I emailed you and advised that Christine Howe, an attorney from Vermont, was assigned to be the investigator. I again asked you to reserve Friday morning for the anticipated interview.

- On Tuesday evening, December 8, at 7:54 p.m., you emailed me and requested that the interview not be recorded.

- On Wednesday, December 9, at approximately 3:00 p.m., you approached me as I was getting ready to teach the New Hampshire Bar Association Practical Skills seminar on employment law for new admittees. You asked me about Christine Howe's qualifications as an investigator, and you raised concerns about the tape recording.

- On Wednesday evening, December 9, at 7:35 p.m., you emailed me and said that you were comfortable with Christine Howe as an investigator, based on my reassurances as to her qualifications and experience.

- On Thursday, December 10, at 12:50 p.m., I advised you that I reviewed your request with the Court about tape recording and advised you, again, that Ms. Howe's practice of tape recording is an accommodation for a permanent physical impairment that she has. I also reminded you that I had previously offered you a copy of the audiotape and would also provide any transcription that may be done. I further advised you that the Court's policy and procedure allows the Reviewing Authority to have input on recommendations and empowers it to make remedial and corrective measures, and an accurate record of the witness interview is essential for that additional reason.

- On Thursday, December 10, early in the afternoon, you emailed me and asked me to give you a call, and I responded that I was in a hearing and unable to speak.

- On Thursday, December 10, later in the afternoon, you advised me, "I need more time with my client prior to meeting with the Court's investigative team. We would like to schedule an appointment for after the holidays. Please let me know what works for all of you."

- On Thursday, December 10, at about 4:00 p.m., we had the phone conversation, as more fully outlined above, where you unequivocally told me that your client would not be interviewed the next morning.

- On Friday, December 11, at 9:32 a.m., I emailed you and stated, "Rose, you have indicated that your client needs more time to prepare for her interview. Will you and Michele be available to meet with the investigator next Friday, December 18? The court is committed to doing a prompt and thorough investigation and Michele's cooperation is essential. Thanks. Julie"

- On Friday, December 11, at 10:05 a.m., you emailed me saying, "We have been here in Plymouth waiting. We can start without you."

4

Rose, serious consequences could result if your client refuses to participate in this investigation in a prompt and timely manner. The Court expects her cooperation. The Court's Anti-Discrimination Policy, a copy of which I am enclosing for your review, specifically provides: "Every employee must cooperate fully with an investigation and shall maintain confidentiality regarding the matter."

I, again, invite Michele to meet with Ms. Howe on Friday, December 18 at the Plymouth District Court. We can confirm the time, but I am assuming it will be in the morning at about 9:30 a.m.

I have not had a chance yet to speak with Ms. Howe to hear about the progress on the investigation, but it is possible that she may be ready to conclude interviews this coming Friday. For that reason, your client's participation at this time, and not after the holidays, is essential. The Court would expect that your client be available to meet with Ms. Howe on Friday, absent a compelling reason.

I look forward to hearing from you. Please send me an email or forward correspondence electronically. Again, we share a mutual goal of ensuring that a prompt and thorough investigation is conducted so that the Court can take whatever action, if any, is necessary in response.

Thank you.

Very truly yours,

Julie A. Moore

Enclosure

cc:  Administrative Office of the Courts