UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

*******************************************
| | |
|---|---|
| Estate of Michele M Walker, | * |
| Charles E. Walker, Administrator | * |
| | * |
| Plaintiff | * |
| | * |
| v. | * |
| | *   Civil Action No. 1:11-cv-421-PB |
| State of New Hampshire – Administrative | * |
| Office of the Courts and State of | * |
| Hampshire – NH Second Circuit Littleton | * |
| District Court – Administrative Office of the | * |
| Courts | * |
| | * |
| Defendants | * |

*******************************************

### DEFENDANTS' OBJECTION TO PLAINTIFF'S MOTION TO COMPEL

The Defendants, State of New Hampshire – Administrative Office of the Courts and State of New Hampshire – NH Second Circuit Littleton District Division – Administrative Office of the Courts (hereinafter collectively referred to as "AOC"), by and through their counsel, the Office of the Attorney General, object to Plaintiff's Motion to Compel, stating as follows:

1. As is more fully described in Defendants' Objection to Plaintiff's Motion to Further Extend Deadlines for Filing Summary Judgment Objection, Discovery and Trial, the plaintiff did not propound any discovery in this case until approximately one year after it commenced. The plaintiff now seeks to compel production of documents the AOC maintains are privileged or otherwise protected from disclosure.

2. The discovery disputes at issue in Plaintiff's Motion to Compel fall primarily into three categories. The plaintiff has sought to compel the production of: (1) discovery

1

related to Christine Howe's investigation; (2) confidential personnel files of State employees; and (3) information regarding unrelated claims made against the defendants. In addition, the plaintiff seeks permission by the Court to have ex parte communications with State employees.

## Discovery Related to Christine Howe's Investigation

3. By way of background, on November 9, 2009, Ms. Walker sent an email that contained allegations of discrimination in violation of the New Hampshire Judicial Branch's Anti-Discrimination Policy. Following receipt of that email, the AOC retained Christine Howe, a Human Resources Manager with the Vermont Supreme Court, to conduct an internal investigation into Ms. Walker's allegations. While under no obligation to retain an individual outside of the Judicial Branch, the AOC decided to retain Ms. Howe because she was "independent" in that she was not employed by or involved in any way with the AOC or the New Hampshire Judicial Branch. She did not work with the plaintiff, or any of the individuals alleged to have committed the harassment.

4. On November 20, 2009, Ms. Walker sent a letter to Jeffrey Smith, Manager of Operations for the AOC, attached hereto as Exhibit A, directing that any further communications be directed to her attorney, Rose Culver. As such, by the time Ms. Howe began conducting the investigation on behalf of AOC and meeting with witnesses, it was clear that the purpose of the investigation was two-fold. First, the AOC wanted to fully investigate the allegations Ms. Walker included in her November 9, 2009 letter. Second, Ms. Howe's investigation became necessary to the AOC in order for it to fully assess any

potential legal claims related to Ms. Walker.[1]  As a result, Ms. Howe's non-fact work product is protected from disclosure.  *See* Fed. R. Civ. P. 26(b)(3)(A)("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative").

5. On January 25, 2010, Ms. Walker filed a Charge of Discrimination with the New Hampshire Commission for Human Rights.  Ms. Walker's legal counsel, Rose Culver, represented Ms. Walker at both interviews conducted by Ms. Howe.  These factors further support the conclusion that notes prepared in connection with the investigation were made, in part, in anticipation of litigation.

6. The plaintiff now seeks to compel "all information provided to Ms. Howe." Mot. to Compel ¶ 12(A).  The AOC has turned over all information Ms. Howe gathered from witnesses throughout her investigation.  This includes all transcripts of those interviews and all materials gathered or received by the investigator.  In other words, the AOC has turned over all factual materials gathered over the course of its investigation.  What the plaintiff now seeks are the communications between AOC's investigator and its attorney, as well as notes the investigator kept, which show her thoughts and mental impressions.  These documents are protected by the attorney client privilege and under the work product privilege.

7. The plaintiff argues that "Defendant is using the investigation as a defense" and, as such, there is no work product privilege. Mot. to Compel at ¶ 8.  In other words, the

---

[1] The fact that Ms. Howe's investigation served two purposes does not undermine the fact that the AOC sought an individual from outside its organization in order to ensure an even handed unbiased inquiry into Ms. Walker's allegations.

plaintiff is suggesting that it was the AOC that put the investigation into the Ms. Walker's allegations at issue in this litigation. However, the plaintiff put the investigation at issue in its Complaint, leaving the defendants no choice but to defend against the plaintiff's allegations. *See e.g.,* Compl. at ¶ 40 ("Said investigation was hostile and intimidating to Plaintiff."). In fact, in the next paragraph in its motion, the plaintiff admits that it put the investigation at issue in its Complaint. Mot. to Compel at ¶ 9 (citing Compl. ¶¶ 37-43, 61-64). Certainly the defendants should not have to choose between offering no defense or waiving the work product privilege.

8.  Moreover, the AOC has not claimed any privilege over the factual materials gathered by Ms. Howe. It has produced all documents that Judge Kelly considered in drafting his report of investigation.[2] The AOC continues to maintain its claim of privilege over Ms. Howe's opinion work product which shows her "mental impressions, opinions, conclusions, judgments, or legal theories." *See Reitz v. City of Mt. Juliet*, 680 F.Supp. 2d 888, 892 (6th Cir. 2010)(internal citation omitted). As the Sixth Circuit noted in *Rietz*, even where a party has waived privileges over documents underlying an investigation by asserting the investigation as a defense to liability, "only the 'fact' work product . . . – that is the portions of documents memorializing the information gathered by the investigators – is discoverable." *Id.* at 895. *See also Upjohn Co. v. United States*, 449 U.S. 383, 402, (1981) (discovery of opinion work product requires "far stronger showing of necessity and unavailability by other means").

---

[2] The final report was issued by Judge Kelly on July 12, 2010, after Ms. Walker's death. As such, there is a question as to whether the final report is relevant to this case – the plaintiff cannot claim that the final report caused Ms. Walker harm. Nevertheless, the AOC has produced the report, and the plaintiff has deposed Judge Kelly and had the opportunity to ask Judge Kelly the sources upon which he based his conclusions.

4

9. Additionally, the AOC has not waived its right to protect the communications involving legal counsel and the investigator. Communications between Attorney Moore and the investigator fall squarely within the attorney-client privilege. *See Welland v. Trainer*, 2001 U.S. Dist. LEXIS 15556 *7-8, 2001 WL 1154666 (S.D.N.Y. September 28, 2001)("The documents that relate to communications between the investigator and in-house and outside counsel are protected because Defendants' investigator was obtaining confidential, legal advice regarding the investigation.").

10. In its motion, the plaintiff cites two federal district court cases from the State of New York. The plaintiff relies on the Magistrate Judge's ruling in *Pray v. New York City Ballet Co.*, No. 96 Civ. 5723, 1997 WL 266980 (S.D.N.Y. May 16, 1997), for the proposition that the employer should produce internal communications related to its investigation. That portion of the ruling, however, was overturned by the district court judge in a subsequent decision. The Court explained that "it is difficult for me to understand what plaintiff hope to gain by having access to defendant's communication with its counsel. At any rate, the initial communication between defendant and counsel remain protected by the attorney client privilege." *Pray v. New York City Ballet Co.*, No. 96 Civ. 5723, 1998 U.S. Dist. LEXIS 2010, *6 (S.D.N.Y. February 11, 1998). The Court also held that "[t]he same considerations protect the communication after the investigations were concluded."

11. Regardless, the circumstances in *Pray* did not involve the plaintiff putting the employer's investigation at issue. Rather, in *Pray*, the plaintiff alleged there was sexual harassment and the defendant put the investigation at issue as its affirmative defense.

12. Similarly, in *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, (E.D.N.Y. 2001), it was the defendant that first raised the adequacy of the investigation. In

5

*McGrath*, the plaintiff sued her employer for sexual harassment. In response the employer asserted an affirmative defense that it took appropriate remedial action. *Id.* at 247 ("The issue here is whether the corrective actions taken by [the employer] were reasonable in light of what it learned from its investigation."). The employer affirmatively made an issue of its internal investigation as its defense, and then refused to provide the substance of the investigation in discovery. Again, this is in contrast to the case at hand where the plaintiff put the adequacy of the investigation at issue – not the defendants.

13.     A second difference between the cases cited by the plaintiff and the circumstances at hand is that, in the cases cited it appears the investigator did not record the interviews. As such, the plaintiff had no avenue to discover what occurred during the investigation: who the investigator interviewed, what questions were asked, and what was the tenor of the interview. Here, the plaintiff has been provided transcripts of the interviews and audio recordings of Ms. Walker's interviews, as well as all materials provided to the investigator.

14.     Perhaps more important, the plaintiff has had the opportunity to depose any witness relevant to the allegations. The AOC has not denied the plaintiff the opportunity to depose any of its employees, including New Hampshire Circuit Court Judges. Plaintiff's counsel has had the opportunity to ask both Judge Kelly and Jeff Smith questions regarding the retention of Ms. Howe as well as how the investigation was conducted.

15.     As the plaintiff noted in its motion, the AOC has agreed to provide it with the notes taken by Yvonne McAllister, Human Resources Generalist. The AOC has agreed to produce these notes because they are another factual record of the interview, and do not include notes that would constitute the mental impressions of the investigator. Moreover,

Judge Kelly reviewed portions of Ms. McAllister's notes in drafting the final investigative report, where there were omissions in the transcripts due to inaudible portions of the recordings.

16. The plaintiff has made no showing as to why it needs the investigator's opinion work product where it has been supplied with all of the factual materials the investigator gathered through the course of her investigation.

17. Finally, as to the plaintiff's argument that Ms. Howe should be deposed, the plaintiff is well aware that Ms. Howe is not currently employed by the AOC. The AOC is unaware of any attempt by the plaintiff to initiate the formalities of seeking Ms. Howe's deposition over the course of the last 14 months since it filed this lawsuit. If the plaintiff were to seek the deposition of Ms. Howe, for the reasons discussed above, the AOC would move for a protective order to limit the scope of any deposition to exclude any privileged information. Given the extensive production of all factual material obtained by Ms. Howe, it is unclear what information the plaintiff seeks to glean from Ms. Howe. Regardless, the plaintiff should not be allowed to extend deadlines as a result of its decision not to conduct discovery until the last weeks before the dispositive motion deadline and two months before the close of discovery.

### Current Employees Represented by the Attorney General's Office.

18. The AOC has provided the plaintiff with the names of individuals that may have information regarding any of the facts, events or happenings described in the Complaint. *See* Def.'s Interrog. Answer #2. The AOC has not provided home addresses for these individuals because they are State employees that may be contacted through counsel. It

7

is the position of the Office of the Attorney General that it represents all State employees related to this matter.

19. Citing *Upjohn v. United* States, 449 U.S. 383 (1981), Plaintiff argues that it should have ex parte access to non-managerial employees.  Importantly, *Upjohn* involved an analysis of the attorney-client privilege, not whether opposing counsel should have ex parte access to employees of the defendant.  Regardless, the *Upjohn* Court rejected the control group test, which excluded non-managerial employees from the attorney-client privilege with the employer's attorney.  Instead the Court noted that "it will frequently be employees beyond the control group . . . who will possess the information needed by the corporation's lawyers. Middle-level -- and indeed lower-level -- employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Upjohn Co. v. United States*, 449 U.S. at 391.

20. The United States District Court for the District of New Hampshire has had occasion to weigh in on the scope of an entity's counsel's representation of the entity's employees.  In *Young v. Plymouth State College*, CV-96-75-SD, 10/22/98, the Court held that "plaintiffs' counsel may not freely contact employees of PSC who might have information helpful to the preparation of plaintiffs' case without advance permission from the defendants."

21. While in *Young*, the court primarily discussed the applicability of the attorney-client privilege to PSC employees, it is the AOC's position that the Attorney General's office represents all State employees who may have information regarding the plaintiff's claims.  If

8

a State employee witnessed wrongdoing on the part of a co-worker and took no action, that employee's omission could be imputed to the State for purposes of civil liability. The 2004 ABA Model Code Comment, Rule 4.2 Communication with Person Represented by Counsel, Comment 7, explains that the rule prohibits communications with a person in the organization "whose act or omission in connection with the matter may be imputed to the organization for the purpose of civil or criminal liability."[3] Moreover, New Hampshire employees, unlike an employee of a private entity, are entitled to a defense and indemnification in any civil suit brought against them pursuant to New Hampshire law. *See* RSA 99-D:2.

22. This approach is similar to that taken by the Court of Appeals of New York. *Niesig v. Team I*, 76 N.Y.2d 363 (1990). In *Niesig,* the Court addressed the question as to when a corporate employee is a party under New York's disciplinary rule prohibiting an attorney from engaging in ex parte communications with a represented party. *Id.* There the Court rejected the control group test – including only senior management – as too narrow. *Id.* at 373. Instead, the Court held that the best approach "is one that defines 'party' to include corporate employees whose acts or omissions in the matter under inquiry are binding on the corporation . . . or imputed to the corporation for purposes of its liability, or employees implementing the advice of counsel." *Id.* at 375.

23. Given the plaintiff's allegations, its apparent theory of liability, and the possibility that an employee's omission could be imputed to the AOC for purposes of liability, plaintiff's counsel should not be allowed ex parte access to employees of the State.

---

[3] In cases where both federal and state claims are at issue, the federal rule of privilege is the controlling rule. *See Coastal Fuels of Puerto Rico v. Caribbean Petroleum Corp.*, 830 F. Supp. 80, 81 (D.P.R. 1993).

### Confidential Personnel Files

24.     The plaintiff also seeks documents that would be a part of an employee's personnel files.  These individuals are not named as defendants in this matter.  *See* Mot. to Compel ¶¶ 17, 18, 21, 25. There is a privacy interest in personnel records.  *See* RSA 91-A; *see e.g.*, N.H. Administrative Rule Per. 1501.02, Limited Access to Full Records. Information protected and privileged by State privacy laws can only be discovered if it is "essential to the plaintiff's case."  *Petition of Haines*, 148 N.H. 380, 381 (2002); *see Falcone v. City of Warren*, 2008 U.S. Dist. LEXIS 64727, *11 (E.D. Mich. August 22, 2008).  It is unclear how or why any State employee's personnel file would be essential to the plaintiff's case.  Counsel for the defendants has reviewed each requested file and informed the plaintiff that there is no information in any of the requested files that relates in any way to the allegations in the Complaint.  Also, in answering interrogatories the defendants notified the plaintiff that no disciplinary actions were taken against any of the identified individuals in connection with complaints made by Ms. Walker.  Plaintiff's counsel also inquired into any disciplinary actions with respect to each witness she deposed.

### Prior Complaints of Discrimination

25.     In answering Interrogatory #20, regarding whether the AOC had been a party to a charge of discrimination within the past ten years, the AOC noted that two charges of age discrimination were brought against the defendant and dismissed.  The plaintiff claims it is entitled to receive all documents related to both matters.  The defendants object.  Both complaints were brought before the U.S. Equal Employment Opportunity Commission ("EEOC") and, as such, the documentation is not public.   Both cases dealt with claims

wholly unrelated to Ms. Walker in that they were age discrimination claims.  Importantly, the EEOC made no finding of discrimination in either case.  In one matter, the plaintiff then filed a Complaint in this Court.  See Mary Ann R. Landers v. State of New Hampshire, AOC, C-04-11-B.  The State's motion for summary judgment was granted in that case on April 14, 2006.  The plaintiff cannot establish a basis for being entitled to prior litigation wholly unrelated to this case and therefore, the request to be provided any additional documentation related to these two prior claims should be denied.

26.   In the plaintiff's request for documents, it seeks "[c]opies of any and all statements, correspondence, emails or memoranda related to or from anyone regarding sexual harassment claims made by other employees in the past 5 years."  From the period of 2007-present, the AOC has reviewed approximately 63 complaints of alleged sexual harassment.  These claims involve all of the state courts.  All of the claims are confidential personnel investigations.  None of these cases relate to any individuals identified in the Walker Complaint or the court where she worked (Littleton District Court).  The defendants respectfully submit that the plaintiff has failed to make a requisite demonstration of relevancy sufficient to invade confidential employment matters.  When a court employee makes a complaint of a violation of the Anti-Discrimination Policy to its employer, AOC, he/she is entitled to expect that complaint will be reviewed and handled properly.  He/she is also entitled to privacy regarding that complaint and not have the details of it provided to a litigant in another unrelated case.  In turn, a person against whom a complaint is made is similarly entitled to privacy regarding the investigation whether the allegation are determined to be founded or unfounded.  At a minimum, if this Court is inclined to provide any information regarding these complaints to the plaintiff, the defendants respectfully request

that the Court conduct an in camera review of a summary that the AOC has prepared of the claims so that it can determine whether any the claims are in fact relevant to overcome the confidential nature of the investigations.

27. No separate memorandum of law is necessary as the granting of this motion is within the Court's discretion and the relevant law is cited herein.

WHEREFORE, the defendants respectfully request that this Honorable Court:

A. Deny the plaintiff's motion to compel; and

B. Grant whatever further relief the Court deems just and appropriate.

Respectfully submitted,

State of New Hampshire – Administrative Office of the Courts and State of Hampshire – NH Second Circuit Littleton District Court – Administrative Office of the Courts

By their attorney,

MICHAEL A. DELANEY
ATTORNEY GENERAL

Date: November 13, 2012                /s/ Mary Ann Dempsey_____
                                        Mary Ann Dempsey
                                        NH Bar No. 13123
                                        Senior Assistant Attorney General
                                        New Hampshire Attorney General's Office
                                        33 Capitol Street
                                        Concord, New Hampshire 03301-6397
                                        Telephone: (603) 271-3650
                                        Email: mary.dempsey@doj.nh.gov

## **CERTIFICATE OF SERVICE**

     I hereby certify that a copy of the foregoing was electronically served upon Leslie H. Johnson, Esquire.

|  |  |
|---|---|
|  | s/ Mary Ann Dempsey_____ |
| Date: November 13, 2012 | Mary Ann Dempsey |