UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| Estate of Michele M. Walker        )<br>v.                                                        )<br>New Hampshire Administrative Offices of  )<br>the Courts, et al.                              ) | Civil Action # 11-CV-421-PB |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTION TO
PLAINTIFF'S MOTION TO COMPEL**

NOW COMES the Estate of Michele M. Walker – Charles E. Walker, Administrator, Plaintiff, by and through its attorney, Law Office of Leslie H. Johnson, PLLC, and respectfully submits Plaintiff's Response to Defendants' Objection to Plaintiff's Motion to Compel, and in support thereof states as follows:

**Discovery Related to Christine Howe's Investigation**

1. Defendants did not hire Ms. Howe as an outside attorney to investigate harassment, and therefore there is no attorney client privilege. Nor did their attorney, Ms. Moore, allegedly direct her investigation. In addition, they have used Ms. Howes' investigation as a defense in this matter, therefore waiving any implied work product privilege.

2. Defendants represented that Ms. Howe was an independent outside and impartial investigator. See Ex. 3, p. 3 (attached to Plaintiff's Motion to Compel)[1]. Defendants now attempt to parse the word "independent" as meaning only that she was not a part of the AOC. Defendants then go on to claim Ms. Howe's investigation had a dual purpose for AOC to investigate the allegations *and* to prepare for litigation. Said purpose was undisclosed to Plaintiff, and this explanation sounds like retaliation. Generally, investigations do assess the merits of the claim. In essence, AOC's claim amounts to conducting discovery prior to litigation.[2] Up through the date of Ms. Walker's death, she was hoping to get the matter resolved and return to a workplace free of harassment, which could have occurred with a proper impartial investigation. (Compl. at 42).

---

[1] See Exhibit 1-A, 12/4/09 email from Attorney Moore to Attorney Culver.

1

3.	Defendants claim the notes of Ms. Howe, were "in part in anticipation of litigation", which is an admission they were also part of the allegedly impartial investigation by Ms. Howe. (Def. Obj., par. 5.)

4.	The claim of work product should be unavailable to Defendants because they are using the investigation as a defense, and she was "independent" and outside the AOC. Any information provided to Ms. Howe, by anyone, including Ms. Moore, should be discoverable. It cannot be private work product of Attorney Moore, if she gave it to Ms. Howe, who was not an AOC attorney, nor the client. Any privilege for any such communications, written or verbal, should be deemed waived.

5.	Plaintiff believes if discovery is granted, it may become obvious the investigation was a sham, and constitutes retaliation against Plaintiff. Plaintiff became so distraught at the tone of the interviews that she became unable to further attend at the recommendation of her medical care provider. (Compl. at par. 40-42).

6.	Judge Kelly has been deposed and claimed he had no report from Ms. Howe, but looked at the transcripts, documents and Ms. McAllister's notes (which have just recently been provided to Plaintiff's counsel). Plaintiff should be able to test Judge Kelly's credibility by having any report Ms. Howe produced, as well as her notes and entire file, to include any notes from Attorney Moore, which may have influenced her investigation and be demonstrative of retaliation. These need to be produced before Plaintiff deposes Ms. Howe.

7.	Plaintiff disputes the attorney-client privilege applies to Ms. Howe as she was not hired as counsel. Also, any of her "work product" is therefore not protected as attorney work-product. Also, for any information provided to Ms. Howe (a third party) by Attorney Moore, any such privileges are waived.

---

[2] Plaintiff did file a Charge with the Commission, which was necessary to meet statutory filing deadlines.

8. Defendants cite *Reitz v. City of Mt. Juliet*, 680 F.Supp. 2d 888 (6th Cir. 2010), for the proposition that only fact, not opinion, work product needs to be produced. However, in *Reitz*, the defendant hired an outside licensed attorney as an investigator to perform an internal investigation, and then used the report as part of its *Faragher-Ellerth* defense. Defendant was required to turn over the investigator's notes but were allowed to redact opinion evidence after an in camera review. The Court stated "The City has withheld these documents on claims of attorney client privilege and work-product protection. The privilege log entry for nearly every document sought by the instant motion reads: Memo to file from [lawyer] regarding interview with [witness.]" *Reitz* at 890. The Court went on to require the investigator's notes, reasoning that the witness interviews contained information that could be valuable for impeachment purposes, and it was likely those witnesses would testify at trial, overruling the City's objection on relevance grounds. *Reitz* at 891.

9. As to the waiver of the attorney-client privilege and work-product doctrine, in *Reitz* plaintiff agreed they applied but claimed they were waived. The City had actually hired outside counsel. In the case at bar, Ms. Howe is not licensed to practice in New Hampshire, and therefore could not have been hired as counsel. Also, Defendants claim Attorney Moore was *not* the investigator. The *Reitz* Court ruled that:

> the City seeks to block discovery of the interview memoranda that document [attorney's] investigative efforts. But the defendant cannot use the [Attorney] report as a sword by premising its *Faragher-Ellerth* defense on the report, then later shield discovery of documents underlying the report by asserting privilege or work-product protection…The Sixth Circuit has recognized that, when a party uses 'the content of privileged communications' offensively, it is troublesome for the party to subsequently claim privilege 'as a shield to prevent either testing of the claim or, if some privileged communications have been revealed, amplification or impeachment of the material.'…Accordingly, 'the privilege may be implicitly waived when the defendant asserts a claim that in fairness requires examination of the protected communications.'…(going on to cite numerous cases compelling this conclusion).

*Reitz* at 892-893 (internal citations and end citations omitted).

10.     Defendants claim they had no choice but to defend against Plaintiff's allegation with respect to the investigation. Def. Obj., par. 7.  However, as noted in *Reitz,* where the defendant raised the *Faragher* defense the court ruled that

> [O]nce the privilege is waived, waiver is complete and final.  … Having previously decided to rely on the investigation in its summary judgment papers, the Defendant cannot now 'unwaive' privilege and work-product protection.  The defendant achieved exactly the result it wanted by raising the defense-the hostile environment claim was dismissed.  The City cannot argue that its ultimate success somehow negates the waiver inherent in that tactical decision.  The court will thus allow discovery of the interview memoranda.

*Reitz* at 894-95.[3]

11.      In the case at bar, Plaintiff is not requesting Attorney Moore's notes of the interview (unless she gave them to Ms. Howe, which is unknown at this point[4]), but all material that Ms. Howe has in her possession, which was necessarily part of her investigation. This would necessarily include notes handed to her by legal counsel Moore during interviews of Plaintiff and any other witnesses, as well as deposition testimony about any conversations.  Ms. Howe is not an extension of Defendant's counsel, as they claim she is "independent".

12.     Defendants also rely on *Welland v. Trainer,* 2001 U.S. Dist. LEXIS 15556 *7-8, 2001 WL 1154666 (SDNY September 28, 2001).  However, in said case, the investigator was an inside HR person and it hired outside counsel who then directed the investigation, which is not the circumstance here.  More importantly, it was not a case where the defendant was using the investigation as a defense.  *Id.*

---

[3] The Defendant also relies on *Upjohn Co. v. United States,* 449 US 383 402 (1981), but in said case the lower court had mistakenly believed the work-product protection did not apply.  The Defendant was seeking evidence of oral statements from interviews produced by Defendant's inside and outside counsel as part of an investigation, which had not been disclosed to any third party.  *Upjohn* at 401-402.
[4] Therefore, *Pray* may still be relied upon.  See Def. Obj, par. 10 – 11.

4

13.     Defendants claim in par 13 that all of the interviews were recorded and Plaintiff has been provided transcripts and audio recordings.  However, in fact, not all the interviews were recorded, and some have only notes available, and Plaintiff has not been provided with audio of witnesses other than Plaintiff.  Defendants have just provided some notes of Ms. McAllister, but it remains unclear whether or not Ms. Howe has notes or other documents.  This is further discovery to which Plaintiff is entitled.

14.     Apparently, Defendants expect to use the investigation as a defense without allowing Plaintiff to fully review all materials received by the investigator, including any notes she took, as well as any potential report, and perhaps even have her testify without Plaintiff being able to depose her.  This would deprive Plaintiff of full discovery in this matter.[5]

**Current Employees Represented by the Attorney General's Office And Other Issues**

15.     Defendants' reading of the law is believed to be unreasonably narrow, in essence, allowing Defense counsel to be present while Plaintiff's attorney is producing work-product through the interview process.  Also, Defendants cite RSA 99-D re: representation of and cost of defense for suits brought against employees, which is not on point.

16.     Confidential files. These are necessary to test the veracity and credibility of the witnesses, as well as the reasonableness of Defendants' conduct.  Plaintiff has offered to enter into a protective order, and some of the deposed witnesses stated they would release the records.

17.     Prior Complaints. How other individuals were treated after making a complaint may show a pattern by Defendants, and same should be discoverable. A protective order can be entered.

---

[5] Although Defendants fault Plaintiff for not having made an effort to depose Ms. Howe, in fact Plaintiff did make such request as indicated in an email of 10/18/12, which Plaintiff understood Defendants to object to.  See Ex. 1-B.

WHEREFORE, Plaintiff requests the Court grant Plaintiff's Motion to Compel.

                Respectfully submitted,
                **Estate of Michele Walker, Plaintiff**
                By its attorney

Dated: November 27, 2012         /s/ LESLIE H. JOHNSON
                Leslie H. Johnson, Esq., NH Bar #5545
                LAW OFFICE OF LESLIE H. JOHNSON, PLLC
                PO Box 265
                Center Sandwich NH 03227
                603.284.6600
                leslie@lesliejohnsonlaw.com

### CERTIFICATE

I hereby certify that a copy of the foregoing was electronically served upon Mary Ann Dempsey, Sr. Assistant Attorney General.

Dated: November 27, 2012         /s/ LESLIE H. JOHNSON
                Leslie H. Johnson, Esquire