UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Charles E. Walker, as
Administrator of the Estate
of Michele M. Walker

   v.                                           Civil No. 11-cv-421-PB
                                              Opinion No. 2013 DNH 025

N.H. Administrative Office of
the Courts, et al.

**O R D E R**

The Estate of Michele Walker ("Estate") has sued Walker's former employer, the State of New Hampshire Administrative Office of the Courts and New Hampshire Circuit Court, 2d Circuit, District Division, Littleton (referred to collectively as "defendants" or "AOC"), in eight counts. The Estate asserts claims under state and federal law for gender and disability discrimination, sexual harassment, and retaliation. Following oral argument on the Estate's motion to compel (doc. no. 22), the court took under advisement one portion of that motion and ordered defendants to produce the disputed material for in camera review. The court issued oral rulings from the bench on the other portions of the motion to compel. See Doc. No. 28 (order summarizing the court's rulings during oral argument). The court has reviewed in camera the disputed material and for

the reasons that follow, the court orders production of all but a small portion of it.

**Factual Background**

At the time of the events underlying this lawsuit, Walker was employed as the Clerk of Littleton District Court, and had been so employed since 1996. On May 3, 2010, Walker committed suicide. Walker's husband, Charles E. Walker, as the Administrator of the Estate, brought this lawsuit.

The complaint alleges that from the winter of 2007 forward, Walker experienced workplace harassment, discrimination and retaliation so severe that it culminated in her suicide. Prior to her suicide, Walker voiced complaints about the alleged harassment to her supervisors at the AOC. The Estate claims, however, that they discouraged her from pursuing her complaint in any formal way. Walker allegedly perceived the harassment as particularly severe in the summer of 2009, and on August 13, 2009, she filed a written complaint with the AOC. On August 14, the AOC began an internal investigation of Walker's complaint. Compl. (doc. no. 1) ¶¶ 22-23. Walker was not content with the manner in which the investigation was handled. Perceiving the harassment as continuing to escalate, Walker took a medical leave on August 20, 2009.

On November 9, 2009, Walker sent an email to the AOC that contained allegations of discrimination against specified employees of the AOC.  These allegations included claims of discrimination that, if true, would constitute violations of the New Hampshire Judicial Branch Anti-Discrimination Policy ("Policy").  Pursuant to the Policy, the AOC is under an obligation to investigate "promptly and thoroughly" any potential violation of the Policy.  The Policy allows for the institution of a "formal investigation" if deemed necessary.

On November 20, 2009, Walker instructed the AOC, via letter, to direct any further communications to her attorney.  See Defs.' Obj., Ex. 1 (doc. no. 24-1).  At some point following receipt of this correspondence, the AOC retained an attorney, Julie A. Moore, Esquire.  On December 4, 2009, the AOC hired Christine Howe, a human resource manager with the Vermont Supreme Court to conduct a formal investigation into Walker's November 2009 allegations ("AOC investigation").

On January 25, 2010, while the AOC investigation was in progress, Walker filed a formal charge with the New Hampshire Commission for Human Rights ("Commission").  On May 3, 2010, Walker committed suicide.  On February 11, 2011, the Estate withdrew its complaint before the Commission and, on August 30, 2011, filed this lawsuit.  The complaint alleges that the AOC

3

investigation was "hostile and intimidating" to Walker and that the workplace harassment coupled with the "aggressive" nature of the AOC investigation "were so distressing to [Walker] that she committed suicide . . . ." Compl. (doc. no. 1), ¶¶ 40-43.

In their answer, defendants claim that the AOC investigation was "prompt, thorough, and reasonable . . . ." Answer (doc. no. 5) ¶ 39. See also id. ¶ 41 ("The interviews were conducted in a professional manner."). In its defense to plaintiff's hostile work-environment and retaliation claims, defendants state: "By way of further answer, pursuant to [the Policy], the allegations were promptly and thoroughly investigated by AOC through witness interviews and found to be without merit." Id. ¶ 61; see also id. ¶¶ 50, 56. As affirmative defenses, defendants assert both that the AOC acted reasonably and in compliance with the Policy "by promptly engaging legal counsel and an independent investigator," and that Walker "failed to timely utilize" the Policy "to avoid harm . . . ." Id. at ¶¶ 104-05.

Plaintiff seeks an order compelling the AOC to produce Howe's complete file. The AOC asserts that it has already produced those materials from Howe's file that qualify as "fact" evidence, including: all witness interview transcripts and audio-recordings of those interviews; all documents Howe

4

obtained from witnesses during her investigation; and the final report, which was authored by the Honorable Edwin W. Kelly, Administrative Judge of the Circuit Court. The AOC objects to production of the remainder of Howe's file, arguing that the remaining documents are immune from production as work-product and/or attorney-client communications.

What remains in Howe's file are four separate categories of documentation that the AOC claims are protected from disclosure: (1) Howe's handwritten notes (Bates nos. 1-46)[1]; (2) Howe's handwritten notes on documents that the AOC has already produced (Bates nos. 47-71); (3) Howe's communications with Attorney Moore and the AOC (Bates nos. 72-189); and (4) Howe's communications with Attorney Moore (Bates nos. 190-200). Pursuant to this court's order, defendants filed a privilege log along with their in camera submission. That log identifies each document by author, recipient, date, type of document, and type of privilege asserted (work-product, attorney-client, both, or neither[2]). Defendants did not provide any affidavit or other evidence to substantiate their claim of privilege, other than

---

[1] Each of the 200 pages of in camera material has a Bates-stamped number at the bottom of the page for identification.

[2] Several documents are identified in the privilege log as "nonresponsive."

the documents themselves.  A summary of the legal principles governing this discovery dispute follows.

## Legal Principles

"Unless otherwise limited by court order, the scope of discovery . . . [extends to] any nonprivileged matter that is relevant to any party's claims or defense - including the existence, description, nature, custody, condition, and location of any document . . . .  Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  "[T]he purpose of pretrial discovery is to 'make trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent.'"  Macaulay v. Anas, 321 F.3d 45, 53 (1st Cir. 2003) (quoting United States v. Procter & Gamble Co., 356 U.S. 677, 682 (1958)).

The Federal Rules of Civil Procedure permit a party to "move for an order compelling disclosure or discovery."  Fed. R. Civ. P. 37(a)(1).  "The party seeking information in discovery over an adversary's objection has the burden of showing its relevance."  Caouette v. OfficeMax, Inc., 352 F. Supp. 2d 134, 136 (D.N.H. 2005).

Here, the dispute concerns material that defendants claim is protected from disclosure by the attorney-client privilege and/or the work-product doctrine. Because this Title VII action arises under federal law, and the state law claims in the case are asserted pursuant to this court's supplemental jurisdiction, federal law governs the applicability of both the attorney-client privilege and the work-product doctrine. See Fed. R. Evid. 501; Gargiulo v. Baystate Health Inc., 279 F.R.D. 62, 64 (D. Mass. 2012) ("courts have repeatedly applied the federal approach to privilege to both federal and state claims where both are included in the litigation"); Precision Airmotive Corp. v. Ryan Ins. Servs., No. 2:10-mc-244-JHR, 2011 WL 148818, *7 (D. Me. Jan. 17, 2011) ("'[f]ederal courts apply federal law when addressing the work product doctrine'") (citation omitted).

The court of appeals for this circuit has recently explained that

> the attorney-client privilege must be narrowly construed because it comes with substantial costs and stands as an obstacle of sorts to the search for truth . . . . The contours of the privilege are reasonably well honed. It protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice.

Lluberes v. Uncommon Prods., LLC, 663 F.3d 6, 24 (1st Cir. 2011) (internal quotation marks and citations removed). The party

invoking the privilege bears the burden of showing "both that it applies and that it has not been waived."  Id.

> The key, it seems to us, involves considering the source and nature of the information contained in the documents.  If the communication contains only client confidences made in pursuit of legal advice--or legal advice based on such client confidences--that communication, if intended to remain confidential, should be covered by the privilege, regardless of whether it came from the client, his attorney, or an agent of either one.  If, however, the transmitted information consists largely of facts acquired from non-client sources, those facts are not privileged.

Id. at 24-25.

The work-product doctrine is broader than the attorney-client privilege and provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  Materials that qualify as work product may, however, be discoverable if:

> (i)  they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A).  Pursuant to Fed. R. Civ. P. 26(b)(3)(B), "opinion" work-product qualifies for "greater

8

protection" than so-called fact work-product, Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 18 (1st Cir. 2012) ("[A]n attorney or other representative's mental impressions, conclusions, opinions, or legal theories are afforded greater protection than fact work product. . . ." (internal quotation marks and citation omitted)), although neither the Supreme Court nor the First Circuit has established the standard applicable in providing for such enhanced protection. See In re Grand Jury Subpoena, 220 F.R.D. 130, 145 (D. Mass. 2004); cf. Upjohn Co. v. United States, 449 U.S. 383, 402 (1981) (discovery of opinion work product requires far stronger showing of necessity and unavailability by other means).

As with the attorney-client privilege, the party asserting work-product immunity bears the burden of showing that the doctrine applies. Vicor, 674 F.3d at 17. In this circuit, the test for determining whether the documents are prepared "in anticipation of litigation" asks whether the disputed document was "prepared for use in litigation, whether the litigation was underway or merely anticipated." United States v. Textron, Inc., 577 F.3d 21, 27 & 29 (1st Cir. 2009) (en banc).

> It is not enough to trigger work product protection that the subject matter of a document relates to a subject that might conceivably be litigated. . . . Nor is it enough that the materials were prepared by lawyers or represent legal thinking. Much corporate material prepared in law offices or reviewed by

9

> lawyers falls in that vast category. It is only work done in anticipation of or for trial that is protected. Even if prepared by lawyers and reflecting legal thinking, "[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not under the qualified immunity provided by this subdivision."

Id. at 29-30 (emphasis in original) (footnote omitted) (quoting Fed. R. Civ. P. 26 advisory committee's note (1970)). Thus, if the disputed document was "prepared in the ordinary course of business" or "would have been created in essentially similar form irrespective of the litigation," the document is not afforded work-product immunity. Id. at 30.

**Analysis**

Against the backdrop of these legal principles, the court has carefully reviewed the privilege log and the in camera submission to determine whether the parties have carried their burdens with respect to the documents at issue. For reasons set forth below, the court concludes that all but a small portion of Howe's file must be produced.

I.   Documents That May Be Withheld from Production

    A.   Documents Post-Dating Investigation

The documents submitted for in camera review include the following documents generated after Howe terminated the investigation on May 4, 2010:

10

- Personal correspondence between Howe, the AOC, and/or Moore, see Bates nos. 044-46 and 188;

- Correspondence between Howe, Moore, and the AOC, which includes work product prepared in anticipation of litigation, see Bates nos. 186, 189-90, and 200;

- Correspondence between Attorney Moore and the AOC -- never copied to Howe -- which the privilege log shows is subject to the attorney-client privilege, see Bates nos. 185 and 187;

- Correspondence between Howe and her own counsel, copied to Attorney Moore, which includes work product prepared in anticipation of litigation, see "16 pages of emails sent by Ms. Howe [to her legal counsel] in April 2011," listed as such in the privilege log, but not Bates stamped; and

- Howe's investigation summary (Bates nos. 103-10), assigned a date of "June 2010" in the privilege log.

All of the above-listed documents were created after Walker's suicide, and, with the exception of portions of the investigation summary at Bates nos. 106-10, the contents of none of these documents is relevant to any issue in this case. The investigation summary includes two types of information: (1) Howe's opinions and mental impressions concerning the reliability of witnesses and Walker's motives, set forth at Bates nos. 103-06, 110-13; and (2) factual information relevant to the reasonableness of the investigation, set forth at Bates nos. 106-10. Howe's mental impressions and opinions concerning the litigation are entitled to heightened protection pursuant to Fed. R. Civ. P. 26(b)(3)(B), and plaintiff has not shown any

11

substantial need for those parts of the summary to prepare its own case.  Accordingly, defendants may withhold the above-listed documents from production, including all of the correspondence and those portions of the investigation report that contain Howe's mental impressions and opinions.

Plaintiff has met its burden under Fed. R. Civ. P. 26(b)(3)(A)(i) of showing that the factual portions of the summary are discoverable, insofar as the reasonableness of the investigation is at issue.  Additionally, in light of the fact that plaintiff's key witness, Walker, has died, the Estate has met its burden under Rule 26(b)(3)(A)(ii) to show a "substantial need" for the factual portions of the summary, to prepare its case.  Moreover, in light of the unique circumstances of this case, plaintiff has shown that there is no substantial equivalent available without undue hardship, thereby meeting its burden under Fed. R. Civ. P. 26(b)(3)(A)(ii).

Therefore, defendants must produce all portions of the summary investigation report that do not include Howe's mental impressions and opinions concerning issues in the litigation. Specifically, defendants may redact from production all parts of Bates nos. 103-05 and all parts of Bates nos. 111-13.  Bates no. 106, up to the first full paragraph beginning "I understand . . . ," and Bates no. 110, beginning after, "She committed

suicide on Monday, May 1," may also be redacted from production. All other portions of the investigation summary must be produced.

   B.   Email Regarding Confidentiality Rules

The documents generated during the investigation, characterized as work product, include an email generated in March 2010, by Attorney Moore, copied to Howe, transmitting advice regarding the types of information that may be disclosed to Walker (Bates nos. 131-32) during the investigation and in any ensuing litigation.  That email constitutes work product, prepared in anticipation of litigation, shielded from discovery by Fed. R. Civ. P. 26(b)(3)(A) and (B).  Plaintiff has not shown any substantial need for Attorney Moore's opinions about the confidentiality of the investigation.  Accordingly, defendants may withhold these emails from production.

   C. Implied Waiver

Plaintiff contends that defendants waived by implication any privilege as to Howe's files, insofar as defendants have asserted that the investigation was prompt, thorough, reasonable, and compliant with the Policy.  See, e.g., Ans. (doc. no. 5) ¶¶ 31, 41, 50, 56, 61-63, and 104-05.  Implied waivers may be found where a party seeks to use the privilege as

13

both a sword and shield, as, for example, where a client seeks to rely on counsel's advice as an element of a claim or defense, or discloses only portions of such communications. See Adrian v. Mesirow Fin. Structured Settlements, LLC, 647 F. Supp. 2d 126, 130-31 (D.P.R. 2009) (citing cases). "Claims of implied waiver must be evaluated in light of principles of logic and fairness," in a manner involving "a fastidious sifting of the facts and a careful weighing of the circumstances." In re Keeper of Records, 348 F.3d at 23. Courts have found it unfair and illogical to allow an employer to assert the reasonableness of an investigation as an affirmative defense, and, at the same time, withhold relevant evidence under the guise of privilege or work product protection. In such situations, courts have found implied waivers as to documents generated in a sexual harassment investigation, where the employer asserts as an affirmative defense that it exercised reasonable care to prevent and correct promptly any discriminatory or sexually harassing behavior. See Angelone v. Xerox Corp., No. 09-cv-6019-CJS, 2012 WL 537492, *3 (W.D.N.Y. Feb. 17, 2012).

Here, as to the small portion of Howe's file that need not be produced, the court declines to find an implied waiver. Defendants have not sought to use attorney-client privilege or work product protection as a sword and shield, as to those

documents, the majority of which post-date the investigation and are not relevant to the reasonableness of that investigation. Nothing in Attorney Moore's opinion letter about the confidentiality rules, or the redacted portion of Howe's investigation summary, is relevant to whether the investigation itself was reasonable and compliant with the Policy. Accordingly, the court declines to find any implied waiver as to the documents at issue.

IV.  Remainder of Howe's File

    A.  Relevance

Plaintiff alleges that the AOC investigation was conducted in such a hostile manner that it contributed to Walker's suicide. Compl. (doc. no. 1) ¶¶ 40-43. Defendants deny those allegations and assert that the investigation was reasonable and compliant with the Policy. See Ans. (doc. no. 5) ¶¶ 39 and 41. In light of plaintiff's allegations about the nature of the AOC investigation, plaintiff has shown that the remaining documents in Howe's file, generally detailing the manner in which the investigation proceeded, are relevant to issues in this case. Those documents are therefore generally discoverable, pursuant to Fed. R. Civ. P. 26(b)(1), except to the extent that they are work product, shielded by Fed. R. Civ. P. 26(b)(3), or privileged attorney-client communications.

B.   Work Product

1.   Defendants Have Not Carried Their Burden of Proof

The key issue, as to the remaining documents labeled as work product in the privilege log, is whether defendants have shown that the documents were prepared in anticipation of litigation, and would not "'have been created in essentially similar form irrespective of the litigation.'"  Textron, 577 F.3d at 30 (citation omitted).  There is no dispute that the prospect of litigation became real when Walker retained counsel, but there are no documents in the in camera submission, and no other evidence in the record, suggesting that any change in the focus of the investigation altered the form or nature of, or the documents generated by, the investigation.  Attorney Moore's involvement, per se, did not convert the Policy-driven investigation into a trial preparation project, and nothing in the documents themselves suggests that the documents assumed a different form or purpose because of the prospect of litigation.  Defendants' blanket assertion of "work product privilege" in this case, without more evidence to support that claim of privilege, does not help the court discern whether, when, or how any of the documents (or portions thereof) generated as part of Howe's investigation, became documents prepared in anticipation

16

of litigation.  Based on the record, the court concludes that any of the remaining portions of Howe's investigation file would have been prepared in essentially the same form, irrespective of the litigation.

Since the First Circuit's Textron decision, district courts in this circuit have denied work-product protection in similar circumstances, where the proponent has failed to make a showing that the documents were created in anticipation of litigation. See Columbia Data Prods., Inc. v. Autonomy Corp., No. 11-12077-NMG, 2012 WL 6212898, at *12-*13 (D. Mass. Dec. 12, 2012) (denying work-product protection for company's audit report and communications related to audit, despite fact that company retained litigation counsel, because record revealed the audit was conducted for fact-finding purposes pursuant to terms of a contract); Noveletsky v. Metro. Life Ins. Co., No. 2:12-cv-21-NT, 2012 WL 4510964, at *4 (D. Me. Sept. 27, 2012) (denying immunity for witness statements generated pursuant to corporate complaint policy); Mullins v. Dep't of Labor, 269 F.R.D. 172, 175-77 (D.P.R. 2010) (denying immunity for investigation report prepared by legal division in discrimination case because legal division played a role as fact-finder rather than as lawyer). Similarly, the court concludes here that, except as specified above with respect to the documents post-dating the

17

investigation and the March 2010 emails concerning Walker's ability to access the investigation file, defendants have failed to show that the work-product doctrine shields any of the documents at issue from production.

    B.    <u>Attorney-Client Privilege</u>

The attorney-client privilege is to be "narrowly construed," <u>Lluberes</u>, 663 F.3d at 24, and defendants have the burden to provide a basis for the court to conclude that a particular communication qualifies for the privilege.  Placing a label of "attorney-client privilege" on a privilege log, without more, does not meet that burden.  <u>See</u> Fed. R. Civ. P. 26(b)(5)(A)(ii) (proponent of privilege must "describe the nature of the documents . . . in a manner that . . . will enable other parties to assess the claim").  "The privilege protects only those communications that are confidential and are made for the purpose of seeking or receiving legal advice. . . . When otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised."  <u>In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)</u>, 348 F.3d 16, 22 (1st Cir. 2003) (citations omitted).

The vast majority of documents for which defendants claim attorney-client privilege are emails wherein Attorney Moore

18

and/or Howe are summarizing the testimony of various witnesses and keeping AOC employees updated on the progress of the AOC investigation. Defendants' blanket assertion of attorney-client privilege does not suffice to demonstrate that these emails constitute communications made for the purpose of seeking or transmitting legal advice. Furthermore, defendants have failed to carry their burden of showing why disclosures of the documents to Howe did not waive the privilege. See id. (proponent bears burden of showing that privilege has not been waived). Accordingly, defendants must produce the documents, as specified below.

## Conclusion

Defendants must, on or before February 27, 2013, produce to plaintiff all documents in Howe's file that pre-date Howe's May 4, 2010, email informing the AOC that Howe was terminating her investigation, and all parts of Howe's June 2010 summary of her investigation (Bates nos. 103-13), excluding from production only those parts of the summary, Bates nos. 106-10, containing Howe's mental impressions and opinions. The documents that may be withheld from production, for reasons stated in this order, are listed below:

- Bates nos. 044-46, 103-05, the first part of 106 (up to the first full paragraph), the latter half of

110 (after "She committed suicide on Monday, May 1."), 111-13, 131-34, 138-39, 185-90, and 200; and

- Documents listed in the privilege log as "16 pages of emails sent by Ms. Howe [to her legal counsel] in April 2011."

Accordingly, plaintiff's motion to compel (doc. no. 22) is granted to the extent consistent with both this order and the order that the court issued from the bench at oral argument. See Order (doc. no. 28) (summarizing oral orders). To the extent that plaintiff's motion to compel is inconsistent with either order, it is denied.

SO ORDERED.

_____
Landya B. McCafferty
United States Magistrate Judge

February 22, 2013

cc:  Mary Ann Dempsey, Esq.
     Leslie H. Johnson, Esq.
     Karen A. Schlitzer, Esq.