UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| Estate of Michele M. Walker – Charles E. Walker, | ) | |
| Administrator, Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action 11-CV-0421-PB |
| | ) | |
| State of New Hampshire – Administrative Office | ) | |
| of the Courts, et al, Defendants | ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S PARTIAL OBJECTION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Estate of Michele M. Walker – Charles E. Walker, Administrator,

Plaintiff, by and through its attorney, Law Office of Leslie H. Johnson, PLLC, and respectfully

submits the within Memorandum of Law in support of its Partial Objection to Defendants'

Motion for Summary Judgment. In support thereof, Plaintiff states as follows:

**INTRODUCTION**

Plaintiff objects to Defendants'[1] Motion for Summary Judgment, except as to Count VI,

marital status discrimination. Plaintiff addresses herein only those material facts in dispute, or

undisputed, which relate specifically to the arguments contained in Defendant's motion, not the

entire case. Defendant appears to make only legal arguments and not raise any factual disputes.

Plaintiff's partial objection to Defendant's motion is incorporated herein by reference.

**FACTUAL BACKGROUND**

It is difficult to respond to Defendant's motion because it does not set forth a concise

statement of undisputed facts as required by LR 7.2 b.1., entitling it to summary judgment on any

---

[1]Defendants are collectively referred to as "Defendant."

issue, instead primarily setting forth a brief history. DM[2], pp. 2-4. Defendant primarily attaches

and uses facts from documents generated by Michele Walker ("M. Walker"), (Ex F). Although it

complains these documents are inadmissible, it uses them in support of its motion. As Defendant

relies on them, these documents should be deemed admissible for purposes of summary

judgment and for use by both parties. Despite not having a concise statement from Defendant,

Plaintiff submits disputed and undisputed facts justifying denial of Defendant's Motion. See

§I.A. Thereafter, Plaintiff addresses areas of disagreement with the limited facts set forth by

Defendant. See §I.B.

## I.    PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE IN ACCORDANCE WITH LOCAL RULE 7.2 b.2.

**Fact(s) #1 (undisputed)**: M. Walker was a member of a protected class (female), is

unavailable (deceased), and heterosexual.

**Fact #2 (appears undisputed)**: M. Walker was subjected to unwelcome sexual

harassment, based on gender and sexual orientation.

*Plaintiff states*: Yes

"I was subjected to severe and/or pervasive sexual harassment in my place of employment which created a hostile work environment. This sexually harassing behavior included comments related to homosexual and heterosexual relationships." Exs H and 2[3], 01/25/10 Charge of Discrimination ("Charge"), signed under oath by M. Walker.

Complaint ("Comp."), ¶13, 14, 48-50 and 74; Ex F, including 24-page Journal, incorporated

herein by reference. This includes the entire chronology prepared by M. Walker.

Depositions of witnesses, Ex 3,[4] Affidavit of Jennifer Elliott with attached Ex 3A-3H.

Independent corroboration by defense witnesses, who were basically hostile and/or biased, as

---

[2]Defendant's Memorandum of Law in Support of Motion for Summary Judgment is hereinafter referred to as "DM."
[3]Defendant's Ex H is also submitted as Plaintiff's Ex 2, which is authenticated by Attorney Rose Culver.
[4]Affidavit of Jennifer Elliott which summarizes her review of factual allegations at ¶13 and 14 of Complaint, and admissions in depositions.

they still work for Defendant. They corroborated 7 out of 12 allegations in Comp. ¶13, and 5 out of 9 allegations in Comp. ¶14;[5]

*Defendant states:* It is unclear whether Defendant disputes this fact. See DM, p. 9, ¶2 and 3, stating it challenges whether M. Walker was "subject to *unwelcome* sexual and/or sexual orientation harassment – although they recognize this is a factual dispute and may not be appropriate for summary judgment." DM, p. 10 at fn 8. This fact should be deemed undisputed.

**Fact #3 (disputed):** Whether or not said harassment was severe or pervasive, creating a hostile work environment.

*Plaintiff states:* Yes. See citations in Fact #2 above. Also, some defense witnesses agreed that if the events occurred, they would deem it to be a hostile environment. Ex 3C; 3E; and 3G. See Comp., generally, and ¶13; Ex F[6], p. 105; Ex 12, p. 55, 12/11/09 Culver to Moore email.

*Defendant states:* See DM, p. 12-15, generally denying this.

**Fact #4 (disputed):** Prior to the 08/13/09 and 11/09/09 complaints, M. Walker reported sexual harassment on multiple occasions to her supervisor, Pamela Kozlowski ("PK"), who took no action.

*Plaintiff states:* Yes. Ex F, M. Walker (Bates 104), Ex 11, p. 1[7]. This was also discussed during the investigation. See Ex 12[8], 01/12/10 M. Walker (1st) Interview ("Int."), pp. 42, 64; Ex 13, 02/05/10 M. Walker (2nd) Int., pp. 56-57, 59, Ex 1, ¶32.

---

[5] The figures above represent the number of witnesses who either had knowledge of, or observed, each of the items enumerated under ¶13 and 14 of the Complaint.
[6] References to lettered exhibits are attached to DM."
[7] "She [Pam] told me that she could not do anything about issues that I brought up that concerning the sexual relationships and the sexual harassment I was subjected to because they would say she was crazy and that I was crazy; that I shouldn't repeat this. She would tell me to stay out of it because it is the family division employees, not district court…These were part of the reason that I was afraid to report things to anyone else regarding the sexual harassment."
[8] Leslie H. Johnson Affidavit (Ex 26) authenticates Ex 12, 13, 14A, 14B, 15, 16, 18, 19, 20, 21, 22, 23, 24, and 25. Henceforth, no further reference to said authentication will be made when said exhibits are cited.

*Defendant states:* The sole witness Defendant relies on to rebut Plaintiff's claim that M. Walker complained of sexual harassment prior to 11/20/09 is PK, who admits she would just tune out M. Walker when she was making reports to her (emphasis added). Ex 14B, 10/26/12 PK Dep. Vol. 2, p. 59, l. 17-22. Defendant disputes reports were made, and therefore, asserts PK had nothing to report.[9]

**Fact #5 (disputed):** PK did not follow the Court's policies as a mandatory system-wide reporter.

*Plaintiff states:* Yes, that PK did not follow procedure. See Comp. ¶15; Ex 2, ¶2j. Ex 1, ¶14. To the extent the reports were made as alleged by Plaintiff, PK had a mandatory reporting requirement. Ex 15, Moeckel Dep., pp. 55-57; Ex 14B, p. 94, l. 5-8; Ex 18, Kelly Dep., p. 46, l.19-23 - p. 47, l.1.

**Fact #6 (disputed):** Whether M. Walker was retaliated against due to her complaints of sexual harassment/hostile environment, including that the investigations were conducted in a hostile manner so as to constitute retaliation.

*Plaintiff states:* Yes. After M. Walker filed her 08/13/09 complaint, Hurley was assigned to perform an investigation, which the investigation was woefully inadequate. Hurley had not reviewed the 08/13/09 complaint (Ex 4, 11/09/09) prior to performing her investigation, thereby not knowing what she was investigating. Ex 16, Hurley Dep. p. 29, l. 16-23 - p. 30, l. 1-6. Hurley rudely told M. Walker, "All you've got is a story Michele, just a big story." Ex 1, ¶10; Ex 13, p. 66; Ex F (Bates 121).

The Howe investigation was no better, with yelling, some swearing and a general hostile tone. M. Walker felt like she had been on trial and that no one cared. Ex 1, ¶25; Ex 7, 03/03/10

---

[9]In PK's affidavit predating her deposition, she states M. Walker did not report sexual harassment to her (Ex D, ¶3); and, in her deposition, she thinks she would have remembered such a thing. However, the fact remains she "tuned her out."

Brodzinski to Culver out-of-work note. See also Ex F, Bates 77. par. "FOR THE RECORD"
(incorporated herein by reference), which details the abuse M. Walker felt due to the How
interview, during a time she was still experiencing the upset. The two hostile and retaliatory
investigations led her to take and then stay on medical leave. She had become a subject of the
investigation herself, including hours worked in the distant past, was not allowed to return to
work, and lost pay and benefits, all leading to her suicide. Ex 1[10], ¶39-41; Comp. ¶3, 36, 45, 61,
64-67; Ex 2, ¶8, 01/25/10 Charge of Discrimination; Ex 15, Moeckel Dep., p. 53, l. 3-14,[11]
(stating that it would be inappropriate to fire a person who reported sexual harassment in good
faith).

## II.   PLAINTIFF'S OPPOSITION TO PORTIONS OF DEFENDANT'S "FACTS" SECTION.[12]

**A.**   Plaintiff disputes the claim that all of the factual allegations of the Complaint, and
implicitly evidence, are based only on notes, emails, and documents prepared by Plaintiff and
attached by Defendant as Ex F. DM, pp. 2-3. They are also based on observations by M.
Walker's spouse, Charles Walker ("C. Walker"). C. Walker heard complaints by M. Walker
about sexual harassment while she was upset. Ex 10, ¶7, Affidavit of Charles E. Walker. Also,
Attorney Culver was witness to the retaliatory investigation. Ex 1, ¶23, 25, 26, 28. Documents
developed during investigation and litigation also support the claims. See Ex 3, generally.

**B.**   Plaintiff disputes that the factual allegations are categorized into only two main areas.
DM, p. 2, ¶1, last sentence (hereinafter "s") The third category is retaliation by coworkers, and
Defendant in the manner of investigation and not allowing M. Walker to return to work because

---

[10]Ex 1 is Affidavit of Rose Culver, M. Walker and Plaintiff's former counsel. Attorney Culver also authenticates
Exs F, 2, 4, 5, 6 (02/26/10 Brodzinski to Culver out of work note), 7, 8 (04/06/10 Culver to Moore letter), and 9
(04/26/10 Culver to Moore letter).
[11]Defendant proposes to use Attorney Jennifer Moeckel as an employment practices expert. For purposes of this
objection only, Plaintiff cites from Attorney Moeckel's deposition.
[12]Although Defendant does not cite issues of undisputed fact which support granting their motion, as required by LR
7.2 b.1., Plaintiff notes its dispute with certain statements.

of her complaints of sexual harassment, which lead to her suicide. *See* Comp. ¶43; Ex G, p. 3, ¶2; Exs 2 and H, ¶3, 5-9; Ex J, ¶8-12.

**C.**   Plaintiff disputes Defendant's characterization of M. Walker's "formal" complaint (Ex C) as her first complaint of sexual harassment. DM, p. 2, ¶2. In fact, M. Walker alleged that she had previously complained to PK on numerous occasions regarding the treatment by Towle, including M. Walker's concerns regarding Towle's stability and the sexual harassment. M. Walker alleged that PK advised her not to further report sexual harassment because people would think they, M. Walker and PK,  were crazy. Ex F, Bates 104, ¶1, 3. M. Walker also told C. Walker that PK told her, "They won't believe you," and "It will only come back at you." Ex 10, ¶11; Ex 13, pp. 55-58.

**D.**   Defendant characterizes M. Walker as "allegedly" afraid for her safety due to Towle,[13] Plaintiff states M. Walker was afraid. DM p. 2, ¶2, s. 6. Hurley, who performed the initial investigation, testified that she believed M. Walker was afraid of Towle. Ex 16, p. 65, l. 20-22. Along with the described knife incident, M. Walker was afraid because of Towle's violent history and based on Towle's behavior towards M. Walker, that she had reason to be afraid. See Comp., ¶15, 18; Ex 17, ¶5, 9, Affidavit of Tracy Pierce Ash, confirming Towle's violence, which Affidavit is incorporated herein by reference.

<center>**STANDARD OF REVIEW**</center>

In reviewing summary judgment, the record and all reasonable inferences therefrom must be scrutinized in the light most favorable to the non-moving party. *Am. Airlines v. Cardoza-Rodriguez*, 133 F3d 111, 116 (1st Cir. 1998). The Court should not decide factual issues but,

---

[13]Although Defendant cites Ex E, M. Walker's email complaint, said document actually states M. Walker was "very concerned again for my safety." See Ex E, p. 3.

rather, only decide if factual issues exist. *Sischo-Nownejad v. Merced Community College Dist*., 934 F2d 1104, 1111 (9th Cir. 1991); *Lindahl v. Air France*, 930 F2d 1434, 1438 (9th Cir. 1991); *Foster v. Swift & Co*., 615 F.2d 701, 702 (5th Cir. 1980). "Summary judgment in favor of the party with the burden of persuasion…is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 US 541, 552-53 (1999).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 277 US 242, 249 (1986). *See also* F.R.C.P. 56(c). In its role of giving the benefit of every favorable inference to the non-movant, the trial court may not usurp the fact-finding role of the jury by determining credibility, weighing the evidence, or making factual choices. *Hindman v. City of Paris, Texas*, 746 F.2d 1063, 1068 (5th Cir. 1984).

With regard to the burden at the summary judgment stage as to the prima facie case, various circuit courts have determined that the burden of proof to sustain a prima facie case on a summary judgment motion is not onerous. "There must be a lower burden of proof to sustain a prima facie case than to win a judgment on the ultimate issue of discrimination…." *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (C.A.6, Ohio, 1997).

Also, Defendant has not provided a concise statement of undisputed facts entitling it to summary judgment. As stated by this Court where a Plaintiff failed to incorporate a concise statement of disputed facts supported by appropriate record citations, "[a]ccordingly, [a]ll properly supported material facts set forth in [Defendant]'s factual statement should be deemed admitted.'" *Michnovez v. Blair,* CV-20-100-LM (D.NH 7/5/12) (citing *Soto-Ocasio v. Fed. Ex. Corp.,* 150 F.3d 14, 18 (1st Cir. 1998)).  In the case at bar, all of Plaintiff's properly supported

facts should be deemed admitted where Defendant was silent on same, or did not properly cite to the record.

In addition, it is important to note, that while people do not like to believe that others will discriminate, particularly given all of the education that has occurred, they find it much easier to believe that retaliation occurs, because that is part of human nature. In the case at bar, there are significant disputed and undisputed issues of material fact, which justify denying Defendant's motion.

<div align="center">

**LEGAL ARGUMENT**

</div>

**I.    PLAINTIFF'S CLAIMS ARE NOT BASED ON INADMISSIBLE HEARSAY, AS FRE 807 AND OTHER EXCEPTIONS APPLY.**

**A.    Defendant Uses The Same Documents As Plaintiff In Supporting Its Arguments, And Therefore, Plaintiff Should Be Able To Do So As Well.**

Defendant attempts to limit the documents which support Plaintiff's claim, stating it rests only on unsworn, uncorroborated, inadmissible hearsay, citing some of the same documents Defendant cites in support of its motion. DM, p. 3, ¶3. Defendant simply cannot have it both ways, and Plaintiff can also rely on the information used by Defendant, and these documents, including Ex F, should be deemed admissible.

**B.    Plaintiff Relies On Documents And Evidence Other Than Ex F To Support Its Claims.**

While it is correct that Plaintiff relies on the 24 page summary and other journals, (Ex F), Plaintiff also relies on other evidence, including but not limited to the depositions of witnesses of both parties as set forth throughout this document, i.e., Ex 3/3B-3H. Defendant fails to mention the original 01/25/10 Charge of Discrimination ("Charge"), which was signed under oath by M. Walker (Ex 2/H) and outlines Plaintiff's case, nor offers a reason why it should not be deemed admissible. Ex 1, ¶7.

### C.    FRE 807 Allows The Introduction Of Documents of M. Walker Contained In Ex F.

Even though there may be other ways to introduce some of the exhibits, Plaintiff asserts that the journals and statements (Ex F), as well as the interviews generated by Defendant's investigation[14], are admissible under Rule 807, the "catch-all" exception. Defendant partially misstates the standard and cites to cases not binding on this Court.[15] See DM, p. 5. As stated by Defendant, the relevant test is set forth in *Colasanto v. Life Ins. Co. of N. Am.,* 100 F.3d 203, 213 (1st Cir. 1996), which requires only "satisfactory assurances of trustworthiness," also citing the FRE 804(b)(5) language of "circumstantial guarantees of trustworthiness." [16] *Id.* Plaintiff addresses the specific arguments raised by Defendant.

**1.**    It is not only M. Walker's unavailability which makes her documents admissible.[17] DM, pp. 5-6, ¶2-3. There is corroboration of many of M. Walker's sexual harassment claims, and there is ample independent evidence of retaliation. See Fact #2; Fact #6, Ex 3/3A; Ex 10, ¶7. However, corroboration is not essential. In a case cited by Defendant, *United States v. Bailey*, the 3rd Circuit stated:

> We do not feel that the trustworthiness of a statement offered pursuant to the rule should be analyzed solely on the basis of the facts corroborating the authenticity of the statement. *Since the rule is designed to come into play when there is a need for*

---

[14]Defendant does not argue the transcripts Defendant generated as part of its investigation are inadmissible. Plaintiff submits the transcripts are admissible under FRE 803(6), the business records exception, as done in the ordinary course of business. Ex 18, p. 86-87.

[15]Defendant cites *Hannan v. Beard,* 645 F3d 45, 49 (1st Cir. 2011), but that case involved a prisoner affidavit containing hearsay from prison guards who were not shown to be unavailable. In addition, the test in this Circuit does not require "exceptional guarantees of trustworthiness" as set forth in the non-binding case from the 11th Circuit, *United Technologies Corp. v. Mazer,* 556 F3d 1260 (11th Cir. 2009). DM p. 6, ¶2. In fact, Plaintiff's counsel could find no reference to "exceptional guarantees of trustworthiness" in searching the database for the Supreme Court, NH Supreme Court, US District Court for New Hampshire or the First Circuit. Therefore, it does not appear to be the rule in this jurisdiction.

[16]As to *Polansky v. CNA Ins. Co.,* 852 F.2d 626, 631 (1st Cir. 1988), with respect to FRE 803(24), the trial court admitted a self-serving letter written by a witness/party who was testifying at trial, thus no death causing unavailability, which was reversed on appeal.

[17]Defendant cites *United States v. McCall,* 740 F2d 1331, 1342 (4th Cir. 1984), however, in this 4th Circuit case, the reference is from the concurrence, and the decision based in large part on the confrontation clause of the 6th Amendment. *See McCall* at 1340.

*the evidence in order to ascertain the truth in a case, it would make little sense for a judge, in determining whether the hearsay is admissible, to examine only facts corroborating the substance of the declaration.* Such an analysis in effect might increase the likelihood of admissibility when corroborating circumstances indicate a reduced need for the introduction of the hearsay statement. We do not believe that Congress intended that 'trustworthiness' be analyzed in this manner. Rather, the trustworthiness of a statement should be analyzed by evaluating not only the facts corroborating the veracity of the statement, but also the circumstances in which the declarant made the statement and the incentive he had to speak truthfully or falsely. Further, consideration should be given to factors bearing on the reliability of the reporting of the hearsay by the witness.

*United States v. Bailey*, 581 F.2d 341, 349 (3rd Cir. 1978) (emphasis added).

Plaintiff can meet all of the elements for admissibility; that the documents are offered to prove a material fact, are more probative on the point than other available evidence, and the interest of justice will be served. Defendant apparently does not dispute these elements. *Colasanto, supra.* M. Walker can also meet the standard of circumstantial guarantees of trustworthiness. See §I.C. 2 and 3 directly below.

2.     Defendant states that M. Walker's documents are not trustworthy because a current employee, Brenda Knapp ("Knapp"), disagrees with some of the statements. DM, p. 7, ¶2. Knapp's testimony is subject to cross-examination to elicit bias and show a lack of credibility, and merely demonstrates an issue of fact for the jury. Knapp also supported certain assertions of M. Walker. See Ex 3/3D.

3.     The documents (Ex F) were not created for the purposes of litigation, and thus are satisfactorily trustworthy. DM p. 7, ¶2: M. Walker created the steno book notes while reviewing her other documents (Ex F, pp. 1-9), the calendar journal (Ex F, pp. 10-44), handwritten notes (Ex F, pp. 45-74), typed notes (Ex F, pp. 75-80), and the 24-page statement (Ex F, pp.104-128).[18]

---

[18]M. Walker did have limited help with a few portions of some of the documents, like her spouse helping her write notes as she related things she was upset about. Ex 10, ¶28. Also, Attorney Culver made the 24 page typed document more readable, but did not change the substance. Ex 1, ¶32.[18] The purpose of the 24 page document and others was for the investigation, which the court policies mandated, not for purposes of this litigation. Ex 1, ¶31;

They were created either contemporaneously or for purposes of the investigation conducted by Defendant, not for the purpose of this litigation. Ex 1, ¶31. M. Walker's stated purpose was to be able to return to work in a healthy and respectful environment, not to bring "litigation" against the Court. M. Walker filed her Charge to protect her rights because of statutory time frames (180 days). Ex 1, ¶5, 7, 8. Thus, Defendant's arguments go to weight, not admissibility.

Plaintiff participated in the investigations in the course of her employment at the Defendant's request, and participation was understood to be required. Judge Kelly testified, "I would have to look through court rules. My expectation is that we expect employees … will respond to the inquiries." Ex 18, p. 47, l, 8-16. He agrees that not participating would be potentially insubordinate. Ex. 18, p. 47, l. 16. In addition, the transcripts of the investigations are part of Defendant's investigation of this matter, which it does in the ordinary course of its business. Judge Kelly testified he is aware/or has been involved in, roughly, 12 investigations. Ex 18, p. 11, l. 1.

**4.** M. Walker had no longstanding well-documented hostility towards the Court. DM, p. 8, ¶2. While M. Walker could have thought the Family Division had something to do with the timing of her husband leaving court employment, the Walkers had planned for C. Walker to leave once they were married in 2008, over 1.5 years prior to M. Walker's 11/20/09 sexual harassment complaint. Ex 10, ¶4. Judge Kelly testified that M. Walker never complained to him about C. Walker no longer working in Littleton. Ex 18, 11/07/12 Judge Edwin W. Kelly Dep., p. 102, l. 11-14. M. Walker's last review, in July 2009, was excellent, and there was no hostility noted. In fact, PK states in the review, "[h]er relations with everyone, even with difficult people, are excellent, bar none" and "her interpersonal skills are outstanding. She is effective in all her

---

Ex 14B, p. 94, l. 5-8; Ex 18 p. 46, l.19-23 thru p. 47, l.1.

dealings with staff and the public." Ex 2; Ex 14A, PK Dep. Vol 1, p. 43, l. 5-14; Ex 25, 07/01/09 M. Walker Performance Report, p. AOC000539.

Also, it was clear to Attorney Culver that M. Walker loved her position and just wanted to work without being harassed or retaliated against. Ex 1, ¶15, 16. When Attorney Howe asked M. Walker what she would like to see happen, M. Walker stated, "…that I would be able to work in a good environment…" and "…team effort. Everybody getting along and no hostility, no retaliation, no yelling, no screaming." Ex 13, pp. 90-91. The overwhelming evidence demonstrates M. Walker was an excellent, long-term employee with no malicious motivation. In any event, these are issues of fact for the jury, as are issues pertaining to Defendant's other arguments.

**5.** As far as destruction of some of the documents, Attorney Culver does not believe M. Walker was aware they would be needed, and there was an explanation; M. Walker had been emotionally stressed in reviewing the material. DM p 8, ¶3. Ex 1, ¶42. As to the notes in the spiral note book being out of order (Ex F, pp. 5-6), that only demonstrates that M. Walker was likely going through more than one source in trying to organize her thoughts for the 24 page statement, otherwise there would have been no need for dates. Defendant fails to mention that M. Walker also produced her date book, which is in date order. Ex F, pp. 10-44.[19]

As far as missing documents, Defendant does not have clean hands. M. Walker and Attorney Culver informed Defendant that when M. Walker returned to the worksite in October 2009 to pick up her files, which reportedly contained much information related to the sexual harassment, and some of her other personal belongings, the files were missing. In fact, that was

---

[19]As to the taping of a conversation with M. Walker by C. Walker, any such conversation would appear to be covered by the spousal privilege, and those circumstances may be subject to cross-examination.

the subject of letters between counsel, and the documents were never found. Ex 1, ¶43; Ex 10, ¶20-21.

**6.**    Cross-examination: In addition, Defendant submits that M. Walker could not be cross-examined under oath with respect to the documents. DM, p. 5, ¶1. While technically true, as M. Walker was not under oath, she was in fact cross-examined, some in a hostile manner by Attorney Howe, an agent of Defendant, for approximately 12 hours spanning two different days.[20]

**7.**    Plaintiff disputes Defendant's claim that M. Walker did not make complaints about sexual harassment prior to 11/20/09. DM, p. 8, ¶4. See Fact #4, detailing this fact as basically undisputed, as PK admitted "tuning out M. Walker's complaints.

The minor issues raised by Defendant do not render the documents (Ex F) inadmissible. In fact, Defendant utilized many of these same documents in its memorandum, and Plaintiff has done the same.[21]

**D.    Plaintiff Does Not Need To Exclusively Rely On FRE 807.**

There are other exceptions which make some of the documents admissible, including but not limited to the following:

- Remainder of related writings or recorded statements (FRE 106);
- The business records exception (FRE 803(6));
- Excited utterance (FRE 803(2));
- Then existing mental, emotional or physical condition (FRE 803(3)); and,

---

[20]Contrary to Defendant's assertions, M. Walker was grilled for hours by its investigator and Defendant has produced transcripts. While the investigation (which felt more like an interrogation) was not under oath, it did constitute cross-examination. In fact, Defendant repeatedly relies on the transcript of the harassment interviews in its memorandum, but suggests that Plaintiff should not be able to do the same, i.e. DM p. 5, referencing Ex K. If anyone is impacted by the lack of cross-examination it is Plaintiff, because its attorney was unable to ask M. Walker any questions to clarify the record.
[21]Defendant files a number of other documents which are not under oath, nor affirmed by affidavit as being true and accurate copies of said documents, such Ex B, F, H, J, K, M, R and T. Defendant's authentications of Ex N-U is also lacking as they are not certified as true and accurate copies. Ex 1, Kelly Aff, ¶14. However, Plaintiff's counsel believes same to be true and accurate copies for purposes of this motion, and will treat them in the same manner which Defendant has, as admissible.

- Recorded recollection (FRE 803(5)).

Although these multiple other rules may apply to the documents in question for admission at trial, as both parties have utilized them for summary judgment, they should be accorded full use herein.

## II.   PLAINTIFF MEETS THE ELEMENTS OF HOSTILE WORK ENVIRONMENT UNDER STATE AND FEDERAL LAW (COUNTS I, II, AND V).

The correct test for a hostile work environment from the case cited by Defendant is that a plaintiff establish:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Crowley v. L.L. Bean, Inc.,* 303 F3d 387, 395 (1st Cir. 2002);[22] *see also PÉrez–Cordero v. Wal–mart P.R. Inc.,* 656 F3d 19, 27 (1st Cir. 2011) (end citations omitted).

Defendant claims Plaintiff cannot establish the 3rd, 4th or 5th elements (although misquoted), which Plaintiff disputes.[23]

The 1st Circuit has defined sexual harassment as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitutes sexual harassment when…(3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive working

---

[22]Defendant adds "objectively and subjectively offensive" to element 4, when it is actually part of element 5, leaving out the reasonable person standard and Plaintiff's perception. Defendant also adds the term "materially" with respect to altering the conditions of employment in element 4, when the term does not appear in the case at all. Defendant also attempts to limit the ways in which employer liability may be established, by giving merely one example. Because Defendant has used parts of elements 3-6, Plaintiff will address each element to the extent necessary to rebut Defendant's arguments.

[23]Defendant does not dispute that M. Walker was a member of a protected class or appear to dispute she was subject to unwelcome sexual harassment.

14

environment. 29 CFR §1604.11(a)." *PÉrez–Cordero v. Wal–mart P.R. Inc.*, 656 F3d 19, 26 (1st Cir. 2011).

### A.    Sex-Based Discrimination.

Defendant claims that Plaintiff cannot prove the alleged harassment was "because of" sex, which Plaintiff disputes. Defendant has generally set forth the proper standard for same-sex harassment,[24] and Plaintiff agrees that reliance on *Oncale* is appropriate but that sexual desire need not be proven.[25] "[I]mproper gender bias can be inferred from conduct; if the harassing conduct is gender-based, Title VII's requirement that the harassment be 'based upon sex' is satisfied." *Forrest v. Brinker International Payroll, Company, LP d/b/a Chili's Grill & Bar,* 511 F3d 225, 229 (1st Cir. 2007).

As Defendant describes, there were multiple instances of sex/lesbian-based comments and activities. DM, p. 11. Plaintiff's evidence includes, but is not limited to, Ex F (other statements/journals), Ex 4, Ex 2, and Ex 12. There is also testimony by Gilman about her sexual activities, although she denied soliciting M. Walker. See Ex 19, p. 9. Just as a man staring at a woman's breasts is believed to be "based on sex," so does repeated solicitation of M. Walker to engage in lesbian activities. Ex F, Bates 105, ("The sexual harassment went on constantly, basically every week.")' Bates 106 (On one occasion Lynne was telling stories about the parties…she said after telling the story that I should join in sometime, and try it you don't know what your (sic) missing.") For example, Plaintiff claims female coworkers repeatedly and openly discussed participating in homosexual activities; that they brought in and showed pictures of homosexual parties; sexual comments were made between female coworkers; and, sexually

---

[24]Defendant cites *Foss v. Circuit City Stores, Inc.,* 521 F.Supp.2d 99, 108 (D.Me., 2007), as a 1st Circuit case.
[25]"The same chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." *Oncale.*

offensive jokes and emails were sent. Comp., ¶13; Ex 12, pp. 56, 62, 90. Defendant does not dispute these facts in its memorandum. M. Walker also claimed that sexual innuendos were frequent, as well as sex-specific derogatory terms being used by Towle, namely repeatedly calling M. Walker a "bitch." These qualify under the second method, demonstrating that the other woman (Towle) made it clear that she was motivated by a general hostility to the presence of women in the workplace. See Facts #1 and #2.

Plaintiff asserts it can meet the burden of proving same-sex harassment included that originating from Gilman, who was bisexual and attracted to M. Walker. Ex 19, 12/11/09 Gilman Int., p. 9. "We would do this weekend dating thing but I do not recall being uncomfortable or inappropriate."[26] See also Ex 20, 12/18/09 Knapp Int., pp. 45-46. These comments are examples demonstrating that the harassment was based on sex. Therefore, there are genuine issues of material fact supporting that M. Walker was subjected to a hostile environment on the basis of sex.

**B.     There Is An Issue Of Fact Whether Or Not Plaintiff Was Subjected To Severe and [sic][27] Pervasive Sexual Harassment.**

In *Billings v. Town of Grafton,* in referencing circumstances arising to severe or pervasive sexual harassment in other cases, the First Circuit cautioned that:

> while [those cases] serve as instructive examples of actionable sexual harassment, they do not suggest that harassing conduct of a different kind or lesser degree will necessarily fall short of that standard. *Cf. Harris,* 510 U.S. at 22, 114 S.Ct. 367 (explaining that 'especially egregious examples of harassment' discussed in *Meritor* 'do not mark the boundary of what is actionable'). As another court has cautioned about the use of its own precedent in this area, '[p]rior cases in which we have concluded that a reasonable juror could find that the work environment was objectively hostile do not establish a baseline that subsequent plaintiffs must reach in order to prevail.' *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 606 (2d Cir. 2006) (internal quotation marks omitted).

---

[27]Although in *Madeja* the court incorrectly cited the standard for sexual harassment as "severe and pervasive," it is clear the standard is "severe or pervasive."

*Billings v. Town of Grafton*, 515 F.3d 39, 49 (1st Cir., 2008).

This Court has stated:

Because harassment serious enough to create a hostile work environment often involves a cumulative process in which a series of acts or events mount over time to create an unlawfully hostile atmosphere, the question as to when offensive conduct violates Title VII is often better resolved by the fact finder at trial and not on summary judgment. See *O'Rourke*, 235 F3d at 732. Again, Munroe has introduced sufficient evidence of harassment to satisfy her burden on summary judgment. Whether the conduct that Munroe was subjected to was or at some point over the course of her employment became sufficiently severe or pervasive to support a Title VII harassment claim is best reserved for trial.

*Munroe v. Compaq Computer,* CV-00-379-JM, 10/18/02, section B, (DNH 2002).

Defendant cites *Colón-Fontánez,* but in the case "[t]he incidents described were episodic, but not frequent, in nature; upsetting, but not severe; mildly humiliating, but not physically threatening…Lastly, such acts do not appear to have affected her overall work performance.

*Colón-Fontánez v. Municipality of San Juan*, 660 F.3d 17, 44-5 (1st Cir. 2011).

In the case at bar, M. Walker complained of harassment that occurred at least weekly, but sometimes daily, and much of it was directed at her. See Fact #3; Ex F, Bates 108, "Everyday it was getting more and more impossible to get work done because of constant interruption from sexually related conversations, other non-work conversations, outbursts by Lisa, etc." Furthermore, defense witnesses agreed if, the harassment occurred as listed in the Complaint, that they would find it not acceptable and/or a hostile environment, See Fact #3. Thus, the harassment was subjectively and objectively offensive. Also, as stated by Defendant, the actions occurred over a two-year period. DM, p. 13, ¶2. This meets the pervasive standard, if not the severity standard. See *Blackie v. Maine*, 75 F.3d 716, 722 (1st Cir. 1996) (informal complaints by an employee to her supervisor are protected activity).

> We today join the majority of courts that have considered the issue and hold that actions falling short of ultimate employment decisions, such as tolerating coworker retaliation, may constitute adverse employment actions under certain circumstances. As with a claim of co-worker sexual harassment, a plaintiff claiming coworker retaliatory harassment must show that the harassment was sufficiently severe and pervasive to alter the terms and conditions of her employment. See *Marrero*, 304 F.3d at 26; *Stutter*, 263 F.3d at 703; Richardson, 180 F.3d at 446; Gunnell, 152 F.3d at 1264-65.

*Madeja v. MPB CORP.*, 821 A.2d 1034, 149 NH 371, 380 (NH, 2003)

Plaintiff can satisfy all of the elements of her sexual harassment claim and Counts I, II, and V should not be dismissed.

### C.   Defendant Did Not Take Prompt Remedial Action.

Defendant claims that it took prompt remedial action in light of the circumstances.[28]

Plaintiff asserts that Defendant had actual notice and nothing was done, as Plaintiff complained of sexual harassment on numerous occasions to her supervisor, PK. See Fact #4, which is not clearly disputed by Defendant. Plaintiff has also alleged the investigation was conducted so poorly, and was so hostile, that it constituted retaliation leading to M. Walker's suicide. See Fact #6. There was nothing "remedial" about the hostile and retaliatory investigation. The reasonable-ness of the investigation requires determination on multiple issues of fact by the jury.

### III.   CLAIMS RELATED TO TOWLE DO STATE A VIABLE CAUSE OF ACTION OF DISCRIMINATION AND/OR RETALIATION.

Towle's treatment of M. Walker became outrageous, causing Ms. Walker to fear for her life. There is no reason to separate out the allegations of par. 14 from par. 13 of the Complaint. Plaintiff incorporates its argument regarding "based on sex," §IIA above. The claims about Towle's behavior should be maintained to show the totality of the hostile environment.

---

[28]As to actions by Brown, she was a Clerk of Court, and while not supervisory over M. Walker was a supervisor. Thus, her actions are imputed to Defendant, and not subject to the remedial action test.

Obviously, if M. Walker had participated in the weekend parties and sexual events, it would be less likely for her to have been targeted. Plaintiff is entitled to this inference.

## IV.   THE ESSENTIAL ELEMENTS OF A RETALIATION CLAIM UNDER STATE AND/OR FEDERAL LAW (COUNTS III, IV) ARE MET.

The retaliation took the form of not allowing Ms. Walker to return to work with accommodation, and subjecting M. Walker, someone who had been on leave for a mental illness/emotional distress, to hostile and retaliatory investigations. Comp., ¶39-42; Ex 1, ¶9, 17, 23, 26; Fact #6. This treatment was entirely different than the treatment of the other interviewees, who described their interviews as calm and/or conversational; that the interviewer did not yell or raise her voice to them. Ex 21, LT Dep., p. 166, l. 14-23, p. 167, l. 1; Ex 22, BK Dep., p. 144, l. 15-22; Ex 23. MB Dep., p. 111, l. 13-19; Ex 14B, p. 112, l. 11-19.

The 1st Circuit has set forth the standard for retaliation.

In this instance, there is no smoking gun; that is, there is no direct evidence of retali-ation. In such a situation, succeeding on a claim of retaliation under either federal or Massachusetts law entails proof that '(1) [the plaintiff] engaged in protected conduct under federal or [state] law; (2) [he] suffered an adverse employment action; and (3) a causal connection existed between the protected conduct and the adverse action.' *McMillan v. Mass. SPCA*, 140 F.3d 288, 309 (1st Cir. 1998). In order to make a prima facie showing of these elements, it is not necessary that the plaintiff succeed on the underlying claim of discrimination; '[i]t is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred; that he acted on it; that the employer knew of the plaintiff's conduct; and that the employer lashed out in consequence of it.' *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 827 (1st Cir. 1991).

*Trainor v. HEI Hospitality, LLC, et al,* 699 F.3d 19 (1st Cir. 2012).

Defendant contests only the second element, whether Plaintiff has alleged an adverse, job-related action. DM, p. 9, ¶ 2. See Fact #6. Along with Defendant's partial recitation of Plaintiff's claims, Plaintiff also alleges she suffered a decrease in pay. Ex 1, ¶36.

Defendant contends that the alleged retaliatory "initiation"[29] of the investigation must fail as a matter of law, citing *Blackden v. Stanley*, Civ. No. 02-475-M, (DNH 2003). However, in *Blackden* plaintiff did not explain how the investigation was "retaliatory," and it predates *Burlingon, supra.,* wherein it is explained that retaliation does not have to rise to the level of an adverse employment action. Defendant's argument also misses the point, as Plaintiff has alleged that the investigation was so objectively hostile that M. Walker was driven to commit suicide.[30] Comp., ¶43; Ex 1, ¶39, 40, 41; Ex 11, ¶15; Ex. 10, ¶27.

That Attorney Howe, together with Defendant's counsel who was present, could behave in this manner towards an employee whom they knew: (1) left work due to a mental breakdown; (2) had trouble being scheduled for the interview because of extreme emotional distress; (3) and whose diagnosis was PTSD caused by work, is shameful and simply inexplicable. Defendant also turned the focus of the investigation to Ms. Walker's conduct, instead of focusing on the complaint. It certainly is the kind of conduct which would deter an employee from coming forward and reporting illegal harassment, therefore meeting the *Burlington* standard for retaliation.

The Defendant cites cases[31] indicating that "Plaintiff must demonstrate" that the retaliation, rises to the level of an adverse employment action. See DM, pp. 18-19. In fact, the Supreme Court ruled in *Burlington N. & S.F.R. Co. v. White,* 548 US 53 (2006), that the anti-retaliation provision extends beyond workplace-related or employment-related acts and harm. "The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that

---

[29]Nowhere in the Complaint does Plaintiff indicate that the "initiation" of an investigation was retaliatory. It was the lack of an investigation after M. Walker's reports to PK, as well as the manner in which Hurley and Howe investigations were conducted.

[30]Defendant does not address the issues of causation of the suicide, for which both sides have retained experts.

[31]Defendant cites *Madeja* and *Santiago-Ramos* (DM, pp. 18-19)*,* which Defendant has rebutted with *Burlington*. Defendant also cites the mistaken language in *Madeja* that the conduct must be "severe **and** pervasive," which while an accurate quote from *Madeja* is an inaccurate statement of the law (which apparently the NH Supreme Court has not had an opportunity to correct).

produces an injury or harm… In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington* at 67-68. There is no requirement that the retaliation be severe or pervasive.[32] Whether the evidence rises to the level of being "materially adverse," also known as the "deterrence test" is a question of fact not law.

Along with the retaliatory harassment, M. Walker complained about failure to investigate after her reports to PK, and then that the investigations were shoddy, hostile (yelling, swearing, and aggressive), intimidating, slow, incomplete, and more like an interrogation, and they refused to allow her to return to work. Comp., ¶40, 61-63; Ex 1, ¶17, 23, 26, 26; Ex 13, p. 89. Plaintiff further alleged that as a result of the retaliation, M. Walker's mental state deteriorated to the point she committed suicide. Comp, ¶43, ¶64; Ex 1, ¶39; Ex 10, ¶26-27; Brodzinski stated, "both interviews had exacerbated her symptoms of PTSD, anxiety and depression." Ex 11, Affidavit of Carey Brodzinski, ¶14. M. Walker was forced to use sick time and vacation time instead of being on a paid leave until the conclusion of the investigation. Ex 24, Jeffrey D. Smith Dep., p. 88, l. 3-11; Ex 1, ¶36 (Defendant promised paid leave while investigation pending). M. Walker continued out of work due to the retaliatory investigation and Defendant's refusal to return her to the workplace. Ex 1, ¶ 36. These allegations demonstrate M. Walker suffered multiple adverse employment actions.[33]

---

[32]"A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children." *Burlington* at p. 11, Section II B.

[33]The U.S. Supreme Court in *Burlington N. & Santa Fe Ry. Co, v. White,* 548 US ___, 126 S.Ct. 2405 (2006). The Court ruled that "[i]n our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" 126 S.Ct. at 2415 (internal citations omitted) (emphasis added). Defendant cites cases which require an adverse job action, which is a requirement under Title VII's section 703(a), discrimination, but not 704(a), retaliation. *Burlington* at p. 1.

Therefore, even if there was some requirement of an adverse, job related action (which refusing to allow M. Walker to return to work should cover), M. Walker's resulting suicide qualifies. Furthermore, under the standard as set forth in *Burlington,* the retaliatory harassment as described should qualify.

## V.   DISABILITY DISCRIMINATION CLAIMS CAN STAND AS M. WALKER WAS DISABLED, REQUESTED REASONABLE ACCOMODATIONS, AND THE INTERACTIVE PROCESS WAS NOT AVAILABLE.

Plaintiff filed Counts VII and VIII on the basis of disability discrimination under NH RSA 354-A and ADA. Defendant moves for summary judgment on the basis that M. Walker was neither disabled nor requested a reasonable accommodation. Plaintiff claims M. Walker was in fact disabled and did request a reasonable accommodation, being allowed to return to work with the accommodation of a door between offices and/or later allowed to return when certified for same by her medical provider.[34] Plaintiff also alleges that Defendant refused to engage in the interactive process. Comp ¶ 33, 38.

Defendant assumes, and admits for purposes of its motion, that M. Walker suffered from a mental illness during the relevant time period of August 2009 to May 2010 but agrees Plaintiff cannot establish the necessary elements. Defendant then sets forth part of the history of the commencement of M. Walker's leave. Dr. Reeves completed FMLA paperwork indicating M. Walker was unable to work as she could not interact with other employees and was "unable to drive or leave house alone because of anxiety." DM, p. 20, Ex P and R (p.2).

When M. Walker was released to return to work without restriction, Defendant refused to allow her return. Ex 1, ¶3. In that brief period of time, M. Walker was subjected to her second interview and thereafter became so emotionally distraught from that hostile experience that she

---

[34]Plaintiff does not claim that the hostile sexual harassment investigation was because of her disability (inartfully worded). Plaintiff is not claiming, or no longer claims, workers' compensation as an issue.

was again taken out of work. See multiple medical notes cited by Defendant. DM, pp. 20-22.

Obviously, Defendant had granted FMLA leave for M. Walker's qualifying medical condition.

A factual determination on M. Walker's disability should be left for the jury, along with the

issues of whether the door or transfer of the other workers was a reasonable accommodation.[35]

## VI.    [sic] PLAINTIFF AGREES TO NONSUIT COUNT VI, MARITAL STATUS DISCRMINATION.

Although Plaintiff does not agree with all statements and arguments raised by Defendant

in this section, it agrees to nonsuit Count VI on the basis of late filing.

### CONCLUSION

For the above stated reasons, Plaintiff requests that the Court deny Defendants' Motion

for Summary Judgment and allow Plaintiff's voluntary dismissal of Count VI, Marital Status

Discrimination.

<div style="margin-left: 50%;">

Respectfully submitted,
Estate of Michele Walker, Plaintiff
By its attorney

</div>

Dated:  April 19, 2013                                   /s/ LESLIE H. JOHNSON
                                                         Leslie H. Johnson, Esquire - NHBA #5545
                                                         Law Office of Leslie H. Johnson, PLLC
                                                         PO Box 265
                                                         Center Sandwich NH 03227
                                                         603.284.6600
                                                         leslie@lesliejohnsonlaw.com

---

[35]The 1st Circuit has ruled that whether or not the employee was a qualified individual with a disability and whether a flexible schedule was a reasonable accommodation was an issue for a jury where the employee had a flexible schedule prior to her disability. *Valle-Arce v. Puerto Rico Ports Authority*, 651 F.3d 190 (1st Cir. 2011).

CERTIFICATE

I hereby certify that a copy of the foregoing was electronically served upon MaryAnn Dempsey, Esquire, and Lisa English, Esquire, counsel for Defendants.


Dated: April 19, 2013                      _____/s/ LESLIE H. JOHNSON_____
                                           Leslie H. Johnson, Esquire